VICTOR A. RITAYIK, an infant by May Piskulic, his next friend, Appellant, v. EMMA RITAYIK, Respondent.

St. Louis Court of Appeals. Argued and Submitted June 19, 1919. Opinion Filed July 1, 1919.

DIVORCE: Grounds: Pregnancy at Time of Marriage, etc.: Evidence: Sufficiency. In an action for divorce on the ground that at the time of the solemnization of the marriage defendant was pregnant by a man other than plaintiff without his knowledge at or before the solemnization of the marriage, evidence reviewed and *held* that plaintiff's version is correct, and that he was not aware of the facts in the case connected with his wife's previous conduct, and that the trial court committed error in refusing to grant plaintiff a divorce.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Benj. J. Klene,* Judge.

REVERSED AND REMANDED. (*with directions*).

*Earl M. Pirkey* for plaintiff.

*James G. Berkeley* for respondent.

(1) The respondent says the court committed no error in dismissing the petition of plaintiff. While the evidence was conflicting, and irreconcilable, between plaintiff and defendant it was as a whole, overwhelmingly

in favor of respondent and against the cause of divorce plead in plaintiff's petition. (2) The judgment of the court ought not to be disturbed, in this cause. When in a divorce case the evidence is conflicting, the trial court's opportunity for judging the credit to be given to the witnesses being better than that of the appellate court the latter will defer to the conclusion of the trial court. Million v. Million, 106 Mo. App. 680. The court will review the evidence but "the finding of the trial court merits much deference and consideration and unless just cause is shown from disturbing its judgment, it will be affirmed. Schweikert v. Schweikert, 108 Mo. App. 177. When the testimony as to alleged indignities on the part of the defendant committed against the defendant are conflicting the finding of the trial court will be deferred to Ashburn v. Ashburn, 101 Mo. App. 365, and the divorce denied. When the record shows an irreconcilable conflict in the testimony the appellate court may with propriety defer to the finding of the trial court. Kittredge v. Chillicothe L. & B. Association, 103 Mo. App. 361. If the finding of the chancellor is "in keeping with good conscience" it will not be disturbed. Johnson v. Stebbins Realty Co., 177 Mo. 581. (3) The court did not err in allowing alimony after judgment. Blankenmeister v. Blankenmeister, 106 Mo. App. 390. The court that grants the divorce retains jurisdiction as to the modification of the judgment or maintenance of the wife. Meyers v. Meyers, 91 Mo. App. 151. (4) The court was within its powers in the allowance of alimony (suit money) *pendente lite,* in the St. Louis Court of Appeals. The court still retained jurisdiction while the motion for a new trial was pending, and while the affidavit for an appeal was as yet undertermined. Its decrees and judgments were yet within the "breast" of the court and under the law it was and is the peculiar province of the circuit court to decree alimony and suit money. This he could do at any time in the term—even after final judgment. In this case, however, the affidavit for appeal had not yet been determined nor the appeal yet granted.

REYNOLDS, P. J.—Action for divorce by plaintiff against his wife. Plaintiff, a minor, suing by his next friend, averring that he was married to defendant on October 31, 1918, in the city of St. Louis, avers that at the time of the solemnization of the marriage defendant was pregnant by a man other than plaintiff without his knowledge at or before the time of the solemnization of the marriage; that plaintiff first learned of the condition of the defendant on the day of his marriage and thereupon left her and had not lived with her since.

The answer is a general denial.

There was a decree, on trial before the circuit court, dismissing plaintiff's bill, from which he appealed.

A careful reading of the testimony in the case satisfies us that the learned trial court committed error in refusing plaintiff a decree.

At the time of the solemnization of the marriage between plaintiff and defendant, plaintiff was about nineteen years of age and his wife about the same age. They were married in St. Louis, October 31, 1918, by a justice of the peace. About a week before the marriage defendant told plaintiff that she was pregnant and that he was responsible and that he ought to marry her. They talked it over for awhile and finally plaintiff said that if it was true that he was responsible for her condition, he would marry her. Directly after the performance of the marriage cermoney, and while they were on their way to plaintiff's home, plaintiff, for some reason, became suspicious as to whether his wife had told him the truth and took her to the office of a doctor with whom plaintiff was acquainted. Plaintiff did not tell his wife what his purpose was in going to the doctor's and she made no objection and they went together into the doctor's office. Plaintiff said to the doctor, his wife present: "Doctor, this is my wife, and I have known this girl for only two months and she claims she is in a family way by me and that I had to marry her, and so I married her." He told the doctor that they had been married that day and from some actions of his

wife he became suspicious as to whether she "had not put something over on him." He further told the doctor that if his examination proved that he was in fault in the case, he would stick by defendant, but if it proved otherwise he would not, and would have the doctor's testimony against her. To this defendant said, "That is all right." Whereupon the doctor examined her. In consequence of the doctor's report to him of the condition and length of pregnancy, plaintiff made up his mind to leave defendant, and taking her on a car went with her as far as Tower Grove Avenue, got off the car, went to his own home and, as far as he knew, defendant went to the home of her employer. He saw her two or three times after that at the house of a friend, in the presence of other people, but had not lived with her as her husband from the time of the marriage down, and on November 11, 1918, he brought this action. On cross-examination, plaintiff testified that he thought that one reason he had not noticed the condition of his wife was, that he was very nearsighted and that he had yielded to her solicitation of marriage because he had no reason to think anyone but himself had been intimate with her. Plaintiff denied that he had ever met defendant until about two months before their marriage, when he met her at a house where they were both employed. While admitting that he had had undue intercourse with defendant before their marriage, he denied that it had been under any promise of marriage.

The physician referred to, testified that when plaintiff and defendant came to his office and were in his private room, plaintiff, in the presence of defendant, said that he had been going with her a couple of months immediately prior to their marriage; that she told him she was pregnant and wanted him to marry her; that she had said that he was the father of the child; that he was "willing and man enough" to marry the girl, and that they had got married that day; that something had raised his suspicions at the justice office and after leaving there, and to satisfy himself he had brought

his wife to him (the doctor) for an examination; that he (the doctor) accordingly examined her, she making no particular objection, and he asked defendant how far she was gone, and she said ''Two months,'' After an examination he said to her: ''You are between six and seven months, at least. Don't you think somebody else has been familiar with you,'' to which she said, ''No;'' that it could not be that she was any more than two months gone in pregnancy and that plaintiff was responsible. He further testified that defendant was dressed in a girlish fashion, with a short dress made with a high waist, and a young man very likely would not consider that she had gone very far; that her clothes were loose. Asked if he could ascertain, considering the way she was dressed, and to one ordinarily looking at her, it would appear that she was in the family way, the doctor answered; ''No you wouldn't ordinarily consider that unless you get her in certain positions'' and drew her dress down in a certain way; that she was a plump looking girl and those kind are ''rather deceiving in appearance,'' when dressed as she was. Witness repeated that he had found, on examination, that she was six or seven months advanced and when he told defendant that, she said: ''It is impossible;'' that she had only known defendant about two months.

The doctor, asked by counsel for defendant, on cross-examination, ''Now, doctor, would you say as an expert, when a man who had been having intercourse with a girl right along had to come to a doctor after she was six months along to find out whether she was in a family way or not,'' he answered, ''Yes, sir; I know a case of that sort.'' Asked, ''In view of that girl's appearance when you examined her, would you say it was possible that Victor Ritayik, having constant intercourse with her, would have needed the doctor's statement as to whether she was in a family way or not,'' he answered, ''I think so.''

Further testimony introduced on part of plaintiff was to the effect that he had been introduced to defend-

ant about two months prior to the marriage by the lady at whose place they were both employed at the time and he had never met or had anything to do with her before then. Defendant testified that when the lady introduced them, she (defendant) said she already knew him. She was not corroborated as to this. She further testified that she had met him about nine months before that, when she was employed in another part of the city, but that plaintiff had never been to that house because one of the servants there, a colored woman, told her that their employer refused to allow the help to have any visitors; that she had gone with him from there to dances, moving picture shows, to the parks, but always met him, outside the house where she was then employed. There was also testimony on the part of plaintiff to the effect that defendant's conduct was rather free with men and was commented on; that defendant received a letter at one time, which was delivered to her by the postman in the presence of a policeman, and the policeman asked her if it was from her sweetheart, and she said, "No;" that it was from her husband; that she was a married woman and that her husband was with the army and was absent in France, and showed what she said was a picture of a man she said was her husband. Before her marriage to plaintiff, defendant had told several other people that she was a married woman; that her husband was in the army, and told them his name. It is to be said that as to her testimony as to her relations with plaintiff when she was living at the place other than the place of her last residence, although pressed to do so, she was not able to name a single place to which plaintiff had ever then taken her, or where she had gone with him, or to give the name of a single person who had ever seen them together. She testified that when in the doctor's office, the doctor and her husband suggested that she submit to an operation, which at the time she declined, saying that she would come back the next day. She said that plaintiff and the doctor told

her that they were all ready then and there to perform the operation; had a nurse ready to take care of her, and that there was no danger in it; that they showed her what looked like a cot with something white over it in the doctor's room and she was scared. This was at the home of the doctor, she having had no previous notice that they were going there and it not appearing that the doctor had any appointment with plaintiff or any reason to think that plaintiff and defendant were coming there for any purpose whatever. As to all this she is flatly contradicted by the physician and by her husband.

Defendant gave birth to a child a month and eleven days after the marriage.

Without going more particularly into the testimony, out of consideration for the future of the young woman and of the child, it is sufficient to say that, with all due deference to the finding of the learned trial judge, who had the witnesses before him, we are compelled to hold that the reading of the testimony in this case satisfies us that the plaintiff's version is correct, and that he was not aware of the facts in the case connected with his wife's previous conduct. Her testimony is not only uncorroborated by the testimony of any other witness, but in every instance in which it is met by the testimony of other witnesses, she is flatly contradicted on every material assertion. Our conclusion is that the learned trial court committed error in refusing to grant plaintiff a divorce.

It follows that the judgment of the circuit court dismissing plaintiff's petition is reversed and remanded, with directions to the circuit court to enter up a decree in favor of plaintiff, granting him an absolute divorce from the bonds of matrimony contracted with defendant; so much of the order of the court allowing defendant $100 suit money for attorney's services in the appeal, payable in installments as the circuit court shall direct, is affirmed; the order allowing defendant $5 a month pending the appeal is reversed. *Allen* and *Becker, JJ.,* concur.