ALEXANDER JACKSON *vs.* MARGUERITE LUCILLE RUBY.

Cumberland.   Opinion October 22, 1921.

*A woman who marries, pregnant with a child by another man, but the facts being unknown by her husband, commits a fraud which vitiates the marriage and is ground for annulment, even if the parties to the marriage have before its consummation had sexual intercourse.*

A woman who marries, when, unknown to her husband, she is pregnant with a child by another man commits a fraud which vitiates the marriage and is ground for its annulment on petition by the husband.   It is none the less a reason for annulment if the parties to the marriage have before its consummation had sexual intercourse.

On exceptions by petitioner.   This is a petition praying for annulment of marriage on the ground that defendant was at the time of the marriage pregnant with child by another man, and did not disclose the facts to her husband, but told him that she was pregnant by him as they had had sexual intercourse before their marriage.   The cause was heard by the presiding Justice without the intervention of a jury who denied the petition, and plaintiff took exceptions. Exceptions sustained.

Case stated in the opinion.

*William A. Connellan,* for petitioner.

*Jacob H. Berman, and Benjamin L. Berman,* for defendant.

Sitting: Cornish, C. J., Spear, Hanson, Dunn, Morrill, Deasy, JJ.

Deasy, J. The petitioner prays for the annulment of his marriage with the defendant on the ground as set forth in the petition and found to be true by the Superior Court Justice who heard the case "that on June 17, 1920 respondent was pregnant by another man than the petitioner, and that when she married him she knew her pregnancy was not of his begetting."

The court also found in effect that the parties had before the marriage had sexual relations and that the petitioner believed the assurances of the respondent that he was the father of her unborn child. In denying the petition the Justice ruled as follows:—

"I rule, however, as a matter of law, that inasmuch as the petitioner had had carnal knowledge of respondent's body, as hereinbefore found, the acts and representations of the respondent in inducing the marriage did not constitute such fraud as may be made the basis of a decree of annulment."

To such ruling and denial the petitioner excepted.

It is generally true that a woman who marries, when, unknown to her husband, she is pregnant with a child by another man commits a fraud which vitiates the marriage and is ground for its annulment on petition by the husband. *Reynolds* v. *Reynolds*, 3 Allen, 605; *Donovan* v. *Donovan*, 9 Allen, 140; *Fontana* v. *Fontana*, 135 N. Y. S., 220, 26 Cyc., 903.

It was, however, contended by the defendant and ruled by the Justice presiding that where the parties to the marriage have before its consummation had sexual intercourse the marriage will not be annulled, even though it was induced by the false representations of the woman, believed by the man, that he is responsible for her condition.

The ruling in this case is supported by eminent authorities.

*Foss* v. *Foss*, 12 Allen, 26; *Safford* v. *Safford*, 224 Mass., 392; *Franke* v. *Franke*, (Cal.), 31 Pac., 571; *States* v. *States*, 37 N. J., Eq., 195; *Bartholomew* v. *Bartholomew*, 14 Pa., Co. Ct., 230.

The contrary is strenuously maintained by other courts.

*Lyman* v. *Lyman*, 90 Conn., 399, 97 At., 312; *Wallace* v. *Wallace*, 137 Iowa, 37, 114 N. W., 527; *Ritayik* v. *Ritayik*, 202 Mo. App. 74,

213 S. W., 883; *Di Lorenzo* v. *Di Lorenzo*, 174 N. Y., 467, 67 N. E., 63; *Gard* v. *Gard*, 204 Mich., 255, 169 N. W., 908; *Winner* v. *Winner*, (Wis.), 177 N. W., 680.

The reason for the former rule is stated by the Massachusetts Court in *Foss* v. *Foss*, (supra), thus:

"We have therefore a case in which a man intermarried with a woman whom he knew to be unchaste, whom he had himself debauched, and of whose condition of pregnancy he was well aware. He took no steps to ascertain the truth of her statements concerning the paternity of the child, but, relying solely on her assurances on that subject, he entered into the contract of marriage. It seems to us that on these facts he was guilty of a blind credulity, from the consequences of which the law will not relieve him. His knowledge of the respondent's unchastity and of her actual pregnancy was sufficient to put a reasonable man on his inquiry. It does not appear that he could not have readily ascertained her previous intimacy with another man. Certainly by a resort to a medical examination, or by a delay of the execution of the marriage contract for a brief period, he could have easily put the truth of her statements to a decisive test. Whatever may have been the motives which led him to forbear all inquiry, it is a sufficient answer to his claim to be relieved from his contract that the deceit, if any, which was practised upon him was submitted to voluntarily and wilfully, and that he cannot be allowed to escape from his obligations by proof of facts the knowledge of which he might have obtained by the exercise of a proper and reasonable prudence and discretion."

For the contrary view the Supreme Court of Wisconsin in *Winner* v. *Winner*, (supra) states the ground as follows:

"To say that under such circumstances the man has no right to rely upon the woman's statements that he is the father of the child she is bearing, and that he must make inquiry elsewhere as to her chastity, is to negative all virtue, all truthfulness, and all decency in every woman that may have been imprudent enough to anticipate with her lover the rights of the marriage relation. Such a lapse from good morals should not be held destructive of every ethical instinct of the woman and render her unworthy of belief as to assertions fraught with such serious import, and whose truth she alone knows." . . . . "No right-minded man guilty of having wronged a woman or sharing a wrong with her would so act. He would do as plaintiff

did in this case, marry her. That is the only honorable reparation possible—the only method of legitimatizing the offspring which he believes to be his and of saving the honor of the woman he has promised to marry. The act of marriage in such a case is not the result of negligent credulity, but of honorable motives to repair as far as possible wrongs inflicted or shared by him. Such conduct should be encouraged to the end that lesser wrongs be remedied instead of being followed by greater ones."

In Maine the question is an open one. This court has never before been called upon to consider it. The opinion of the Wisconsin Court above quoted is supported by a preponderance of authority. We think that it has on its side too, the weight of reason.

We do not think that a man circumstanced as was the petitioner in this case should be denied the only remedy for the deception and fraud practised upon him, viz., the annulment of the marriage which but for the fraud would never have been consummated.

Nor can we subscribe to the doctrine that it is ever the duty of a man to subject the woman he intends to marry to the unspeakable humiliation of an inquisition like that prescribed by the court in *Foss* v. *Foss*.

The ruling of the Superior Court, while supported by eminent authority, is, we believe erroneous.

*Exceptions sustained.*