BARBARA ZUTAVERN, APPELLANT, V. RICHARD ZUTAVERN,
APPELLEE.

52 N. W. 2d 254

Filed February 29, 1952.    No. 33111.

*John S. Samson,* for appellant.

*James R. Kelly* and *Merle M. Runyan,* for appellee.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This case was brought by appellant to secure a divorce from appellee. He, by cross-action, asked that the marriage of the parties be annulled.

Appellant alleged residence in Douglas County and marriage with appellee on September 3, 1950; that appellee had been guilty of extreme cruelty towards her; and that she became the mother of a child on January 26, 1951. Appellee admitted the residence of appellant, the marriage of the parties, the birth of the child as alleged by appellant, and that he had sexual intercourse with her commencing in July 1950. Appellee traversed the other claims of appellant and specifically denied that he was the father of the child. He alleged that appellant on about August 25, 1950, falsely informed him that she was pregnant; that he was the cause of her condition; that she implored appellee to marry her; that he believed, relied, and acted upon the information given by her, and solely because thereof consented to and entered into marriage with her; that she was pregnant then and at the time of the marriage as the result of her sexual indulgences with a male other than appellee long prior to his association with her; and that he had not lived or cohabited with her after he obtained knowledge of the fraud by which his consent to the marriage was obtained. Appellee asked that the marriage be adjudged void and that he be declared not to be the father of the child. Appellant replied that appellee was estopped from denying paternity of the child born to her after the marriage of the parties because of his illicit relations with her before the marriage.

The district court found that the consent of appellee to the marriage was obtained by the fraud of appellant as alleged by appellee; denied appellant a divorce; and rendered a decree of annulment of the marriage.

This appeal is a challenge of the correctness of the findings and decree.

This case presents no dispute as to any fact material to its disposition. The record advises that appellant reached the age of 18 years on August 17, 1950, and appellee was 18 years of age September 1, 1950. They attended the fourth grade in public school in Dunning. It is shown that they did not have any association after that until July 23, 1950, or for a period of more than 8 years before that date. They met and were together during the afternoon and evening of July 23, 1950, and on the evening of July 25, 1950. These meetings were uneventful, but commencing with July 26, 1950, according to appellant, or on July 29, 1950, as stated by appellee, and continuing through August 19, 1950, they had frequent and unrestrained acts of incontinence. Their sexual indulgences were nightly on and after July 26 to August 8, 1950. Appellant missed her menstrual period at the end of July. She was going to her home in Alliance on August 8, and shortly before that date she told appellee that she felt that he had got her pregnant. They discussed that possibility and the matter of their getting married. After she arrived home she consulted a doctor. Appellee visited her at Alliance on August 12, she told him that the doctor had said that she was pregnant, and she then advised appellee that he was the cause of her condition. She made this claim to him on several occasions before September 3, 1950. This was the reason he consented to and did marry her on that date.

Appellant, at the suggestion of appellee and his mother, sought and procured the advice of another doctor on September 30, 1950. She told appellee on the evening of that day or the morning of the following day that the physician advised her that she would be delivered of a child in February 1951. Appellee became convinced at that time from the information she furnished him that the condition of appellant was the re-

sult of her improper relations with a person other than appellee, and he so informed her. He asked and demanded that she leave the home where they were living. This she did and they have since been separated. She gave birth to a child of normal full period growth that exhibited no symptoms or evidence of premature delivery on January 26, 1951, exactly six calendar months after she said she first indulged in sexual intimacy with appellee.

Appellant contends that appellee, who married her upon her solicitation after he had sexual acts with her, cannot maintain proceedings for annulment of their marriage, although he was induced to marry her because he was deceived by deliberate false representations, on her part, that she was with child by him and he believed, relied, and acted upon the truth of her statements until he had convincing evidence that her condition was the result of her incontinence long prior to the time she submitted to his embraces.

It is a mandate of the Legislature of this state that marriage be considered a civil contract; that consent thereto by competent parties is essential; and in case consent of one of the parties to the marriage is obtained by fraud, and there has been no voluntary cohabitation of the parties after discovery of the fraud, the marriage shall be voidable at the instance of the one upon whom the fraud was inflicted. §§ 42-101 and 42-118, R. S. 1943. It is obvious that a marriage contract induced by fraud may, under some circumstances, be voidable and annulled at the instance of .the victim of the imposition. What amounts to a fraudulent contract, as these terms are used in the statute to express a recognized condition justifying the annulment of a marriage, has not been often considered or extensively discussed in decisions of this court. The fraud that vitiates a marriage contract does not lend itself to definitive statement automatically resolving every case. It is not every kind and degree of fraud that affords cause for setting aside the contract.

The law differentiates between fraud in the essentials of the marriage relation and deceptive arts to which some persons resort with a view to an advantageous marriage by placing their accomplishments, character, and circumstances in a too optimistic view. While these constitute a species of fraud, they do not afford a basis for destruction of the marriage. However, if there is a deception as to some fact whose existence or non-existence may affect in some certain way the very essence of the marriage relation, resulting in a lawful marriage which practically operates as a fraud upon the deceived spouse, and the existence or non-existence of the fact thus concealed or misrepresented must operate as between the parties to the marriage to prevent some essential purpose thereof and result in a practical destruction of that relation, there exists such fraud as the law contemplates and such as renders the marriage contract subject to annulment.

In Hudson v. Hudson, 151 Neb. 210, 36 N. W. 2d 851, this court said: "Marriage is a civil contract which, if procured by fraud, may, under certain conditions, be set aside." Robertson v. Roth, 163 Minn. 501, 204 N. W. 329, 39 A. L. R. 1342, considered this subject and stated the rule as follows: "In order to constitute such fraud there must be something that destroys the consent which blots out all semblance of contract—or it must impose, at the time of the marriage, upon the one wronged, burdens and obstacles wholly unexpected and of such character that they tend to the destruction of domestic happiness and promote humiliation disclosing a situation intolerable to society and detrimental to the marriage relation." See, also, Brown v. Scott, 140 Md. 258, 117 A. 114, 22 A. L. R. 810; Marshall v. Marshall, 212 Cal. 736, 300 P. 816, 75 A. L. R. 661; Hanson v. Hanson, 287 Mass. 154, 191 N. E. 673, 93 A. L. R. 701; Lyman v. Lyman, 90 Conn. 399, 97 A. 312, L. R. A. 1916E 643; 35 Am. Jur., Marriage. § 87, p. 235.

In consonance with the principle stated above, there

is much agreement that antenuptial pregnancy by another man, if concealed by the wife from her husband who was himself innocent of improper relations with her, is a fraud upon him justifying annulment of the marriage. Jackson v. Ruby, 120 Me. 391, 115 A. 90, 19 A. L. R. 77; Annotation, 13 A. L. R. 1435. Appellee cannot claim the advantage of this doctrine because of his participation in and contribution to immoral conduct of appellant before the marriage, and her counsel insists that the existence of that fact creates an obstacle, insurmountable as a matter of law, to the dissolution of the marriage tie on account of the fraud charged.

The position of appellant is not without support of eminent authorities including: Arno v. Arno, 265 Mass. 282, 163 N. E. 861; Brandt v. Brandt, 123 Fla. 680, 167 So. 524; Lindquist v. Lindquist, 130 N. J. Eq. 11, 20 A. 2d 325; Westfall v. Westfall, 100 Or. 224, 197 P. 271, 13 A. L. R. 1428; Annotation, 11 A. L. R. 931; 55 C. J. S., Marriage, § 34, p. 873; 35 Am. Jur., Marriage, § 139, p. 264. A contrary view is strenuously maintained by many other courts. The exact problem presented in this regard by this case has not had consideration or decision by this court.

The cases denying relief to the innocent victim of the fraud in a situation such as is presented by this case may in general be placed in two groups. Those that deny relief on the ground that the husband, legally speaking, does not come into court with clean hands and may not expect equity to aid him. This is neither logical nor convincing. The gravamen of the case of the husband is not unchastity but the fact that his wife, by reason of a too free manner of life with another, has become pregnant and disqualified to properly enter into or perform the marriage relation with him. The parties are in no sense in pari delicto. The matter in litigation is the marriage contract. The antecedent illicit relations form no part of the contract. They were only incidental circumstances which, while possibly in-

fluencing the appellee to enter into it, were not influ-
ences brought to bear by him to induce the appellant
to do so. They gave appellant no rights which appellee
is now trying to avoid, and imposed no obligation which
he is trying to evade. His conduct in consenting to
marry appellant and in doing so, believing as he did
that she was pregnant by him, was not only without
fault on his part, but most commendable. It was with-
out advantage to him, if the child was not his, as it was
not, but of infinite importance to her as a possible means
of protecting her reputation and the name and good
standing of her child. His willingness to do all he could
to repair the wrong he believed he had done her in being
the cause of her condition and to accept the burden
which his moral duty, under the circumstances as they
were presented to him, called upon him to bear, did not
make his hands unclean in the matter of the contract
from which he seeks relief, nor for that matter as
respects appellant. The equitable doctrine of clean
hands extends only to bad conduct in the very trans-
action in litigation. If a party is not guilty of inequitable
conduct toward the other person concerned in that
transaction, his hands are as clean as the court can
require. Arndt v. Arndt, 336 Ill. App. 65, 82 N. E. 2d 908.

In the second group are those determinations asserting
that the husband, knowing of his wife's unchastity and
pregnancy, was put upon his inquiry as to her condition
and the paternity of the child; that in the pursuit of his
inquiry he was, in view of what he knew, put on his
guard as to the confidence to be reposed in her word,
so that he was not entitled to rely upon it but was bound
to pursue searching independent investigations; and that
because of his experience with and participation in the
incontinence of the woman, he was thereby deprived of
any right to complain of having been deceived by her
false assurance that he was the only fruitful participant
in her illicit intercourse.

The law generally affirms that one who has intention-

ally deceived the other to his prejudice may not be heard to say in defense of the charge of fraud that the innocent party ought not to have trusted him or was guilty of negligence in so doing. This is especially true where there is a relation of trust and confidence between parties contemplating marriage and where knowledge as to the truth or falsity of the alleged misrepresentation is peculiarly within the possession of the defrauding party.

It is difficult to subscribe to the doctrine that it is, in any situation, the duty of a man to subject the woman he intends to marry to the unspeakable inquisition implicit in the view expressed in this line of decisions. The hypothesis that a man is not justified in accepting the statement of a woman, under such circumstances, that he is the father of the child she is bearing, and that he must make searching independent inquiry elsewhere as to her chastity and truthfulness, is an assault on the truthfulness and all decency in every woman that may have been imprudent enough to anticipate with her lover the rights of the marriage relation. The probable futility of the suggested investigation is almost assured because the woman involved would in most cases be the only source of information. Finally, for what purpose should such an investigation be made and extreme care and caution exercised before accepting the representations made by the woman if it would be of no avail and if the law would still impose its forbidding demands because of the single fact that the man had sustained improper relations with her before the marriage.

The rule supported by a preponderance of authority and the weight of reason is that if a man is induced to marry a woman who he knows or believes to be pregnant, believing and relying upon false statements made to him by her that he is the father of the child with which she is pregnant, when unknown to him her condition was caused by another, the marriage may be annulled for the fraud, if it has not been ratified after knowledge of the fraud, and the fact that the husband had

sustained sexual intercourse with his wife before they were married will not bar the husband from resorting to and having the benefit of the remedy of annulment of the marriage. Yager v. Yager, 313 Mich. 300, 21 N. W. 2d 138; Jackson v. Ruby, *supra;* Winner v. Winner, 171 Wis. 413, 177 N. W. 680, 11 A. L. R. 919; Wallace v. Wallace, 137 Iowa 37, 114 N. W. 527, 126 Am. S. R. 253, 14 L. R. A. N. S. 544; Shatford v. Shatford, 214 Ark. 612, 217 S. W. 2d 917; Morris v. Morris, 40 Del. 480, 13 A. 2d 603; Lyman v. Lyman, *supra;* Annotation, 11 A. L. R. 931.

The concealment and untrue statement concerning the father of the child of appellant went directly to the essentials of the marriage contract and constituted a serious fraud on appellee. A woman who is incapable of bearing a child at the time of the marriage by reason of her pregnancy by another man is disqualified to carry out an important part of the contract into which she enters, and any representation which induces a belief that she is in a marriageable condition is a false statement of a fact material to the contract and is sufficient reason to avoid the marriage. The serious consequences of a denial of relief to the defrauded husband in such a situation are many and permanent. There could not be a family which would be advantageous to society or the state after the man discovered he had been victimized to furnish the woman a way out of her difficulties. He could not treat as a wife a woman whom he knew had traded upon his effort to correct a supposed wrong to shield her from the consequences of her unchastity with another man. A just or wise public policy cannot require in the name of a home the maintenance by the husband of an establishment presided over by the one who deceived him as to the paternity of a child, the offspring of another, who daily sits at his table, bears his name, and who, in the absence of a testamentary disposition, would inherit his property. Appellee was entitled under

the facts of this case to be relieved from the contract of marriage and its serious consequences.

Another objection of appellant is that the evidence of nonaccess of appellee to her during the period of gestation of the child born to her on January 26, 1951, consisted of testimony given by the parties to the case; that the presumption of legitimacy of a child born in lawful wedlock may not be rebutted by any information, the source of which is either the husband or the wife; and that all testimony of the husband and wife which has a tendency to prove or disprove legitimacy is incompetent. There is no doubt as to the existence of this rule of law. It was proclaimed more than a century ago in England and has been adopted and applied by many of the courts of this country. It is the rule in Nebraska. Schmidt v. State, 110 Neb. 504, 194 N. W. 679, stated it in this language: "In an action in which the legitimacy of a child born in lawful wedlock is an essential issue of fact, neither the declaration nor the testimony of husband or wife is competent on the question of access, nor should either testify to collateral facts from which an inference of access or nonaccess may be drawn; * * *." See, also, In re Estate of McDermott, 125 Neb. 179, 249 N. W. 555; Morris v. Morris, *supra;* Annotation, 60 A. L. R. 380; Annotation, 89 A. L. R. 911. This rule of law is not of controlling importance in this case because there is much unchallenged proof of nonaccess of appellee until long after the pregnancy of appellant from sources other than the husband or the wife.

There is much said by appellant on the subject of condonation or that the marriage was ratified after knowledge of all of the facts by subsequent voluntary cohabitation of the parties. The pleadings are not sufficient to make this an issue. Eicher v. Eicher, 148 Neb. 173, 26 N. W. 2d 808. The evidence relied upon to establish it is insufficient. § 42-118, R. S. 1943; Sweeney v. Sweeney,

96 Vt. 196, 118 A. 882, 26 A. L. R. 1066; Annotation, 26 A. L. R. 1068.

The district court at the conclusion of the trial required appellee to pay an amount to compensate counsel for appellant for his expenses and services. This is the subject of the cross-appeal. The order complained of was authorized and justified. §§ 42-307 and 42-308, R. S. 1943. In Willits v. Willits, 76 Neb. 228, 107 N. W. 379, 5 L. R. A. N. S. 767, it is said: "* * * it is well settled that in an action by the husband to annul a marriage the wife is entitled to alimony pendente lite and counsel fees, and the fact that the defendant proceeds by cross-petition instead of an original suit does not change the rule." In Nelson v. Robinson, 154 Neb. 64, 46 N. W. 2d 892, this court recently affirmed this pronouncement in this manner: "In Willits v. Willits, 76 Neb. 228, 107 N. W. 379, 5 L. R. A. N. S. 767, the court held that in an action to annul a marriage brought by the husband, the wife is entitled to alimony pendente lite and counsel fees, that the marriage was valid until annulled by the court, and that until such time the husband was liable for the expenses of his family. The court also allowed a reasonable attorney's fee for the services of the defendant's attorneys in the Supreme Court." The cross-appeal should be, and is denied.

The statement in Gard v. Gard, 204 Mich. 255, 169 N. W. 908, 11 A. L. R. 923, is applicable to appellant and this appeal: "The appeal has been prosecuted in the utmost good faith. The question was an open one in this state. Defendant had the right to take the judgment of this court upon it."

The judgment of the district court should be, and it is affirmed. Appellant is entitled to a reasonable allowance for her attorney for services in this court in the sum of $250 to be taxed as costs, and the costs in this case should be, and are taxed to the appellee.

AFFIRMED.