SHIRLEY ANN GOREE, APPELLEE, v. MERLE RAY GOREE,
APPELLANT.

194 N. W. 2d 212

Filed February 4, 1972. No. 38017.

Joseph H. Dea and Homer E. Hurt, Jr., for appellant.

Kerrigan, Line & Martin, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

McCown, J.

In this proceeding, Shirley Ann Goree was granted a decree of divorce and the sum of $20 per week child support. The cross-petition of the defendant, Merle Ray Goree, praying for an annulment of the marriage was dismissed. He has appealed, asserting that the granting of the divorce and the failure to grant the annulment were both erroneous.

Plaintiff and defendant had gone together since the plaintiff was a freshman in high school. They had had repeated sexual relations prior to 1969. The defendant entered military service on August 3, 1967. He served overseas in Thailand from December 7, 1968, until December 2, 1969, except for a 30-day leave from May 15, 1969, until June 15, 1969, during which time he returned to Nebraska. Plaintiff and defendant had sexual relations during his leave. After June 15, 1969, he was in Thailand until December 2, 1969, when he returned to the United States assigned to duty at Offutt Field, Omaha, Nebraska. He arrived in Nebraska on December 4, 1969. On that date, plaintiff and defendant resumed sexual relations.

The evidence indicates that in January of 1970, the plaintiff told the defendant she thought she was pregnant and that he was the father. They also discussed the possibility of marriage. On April 8, 1970, the plaintiff wrote to defendant telling him that he was going to be a father. Thereafter the plaintiff and defendant made arrangements for marriage and were married on June 19, 1970, at Wisner, Nebraska. After the marriage, the defendant returned to his station at Offutt Field and the plaintiff returned to the dormitory of the school she was attending in Fremont, Nebraska. The child was born on July 12, 1970.

The defendant's direct testimony was that he believed the plaintiff's statement that he was the father, but when the child was born on July 12, 1970, he was convinced that the baby was born too early for him to be the

father. The doctor who delivered the child stated his opinion that the baby was a full term baby. His first examination was on June 29, 1970, and at that time he estimated delivery in the latter part of July. In response to a question as to whether the baby could have been conceived on December 4, 1969, he said that he "would doubt it." He stated the foundation for his doubt to be that conception on that date would have made the delivery approximately 5 weeks early and he saw no signs of prematurity, although he did not care for the baby after it was born.

There was evidence that prior to December 4, 1969, the plaintiff had stated that she thought she was carrying the child of another man. There is testimony which would indicate that the defendant knew of the plaintiff's relationship with that man as early as May 1970. There is also testimony which would indicate that the defendant doubted he was the father as early as January 1970, and, in any event before the marriage. At or shortly after the birth at the latest, the defendant knew that plaintiff had had sexual relations with the other individual. One more critical factual issue must be mentioned. The plaintiff testified and the defendant admitted on cross-examination that he had intercourse with the plaintiff on two different occasions after the birth of the child.

In the posture of this case, the issues involved in the defendant's cross-petition for annulment will be discussed first. Both parties rely upon the case of Zutavern v. Zutavern, 155 Neb. 395, 52 N. W. 2d 254. That case held that "if a man is induced to marry a woman who he knows or believes to be pregnant, believing and relying upon false statements made to him by her that he is the father of the child with which she is pregnant, when unknown to him her condition was caused by another, the marriage may be annulled for the fraud, if it has not been ratified with knowledge thereof." Here there is an issue as to the truth or falsity of the

statement relied upon. There is also conflicting evidence as to whether the defendant believed or relied upon the statement in any event. The trial court, who saw and heard the witnesses, resolved those issues against the defendant. Even assuming that plaintiff's statement was false and fraudulent and that the defendant married her in reliance on the statement, under the circumstances of this record his continued sexual relations with her after the birth of the child would constitute ratification of the marriage. See Zutavern v. Zutavern, *supra*. The court's action in dismissing defendant's cross-petition for an annulment was entirely correct.

Plaintiff in her petition for divorce charged the defendant with extreme cruelty. The plaintiff testified that defendant threatened her if she would not go along with him in giving him an annulment instead of a divorce because he wanted to marry a Catholic girl. She also testified that he repeatedly stated that he was not the father of the child. The defendant admitted and confirmed this statement in his pleadings and on the witness stand. Two witnesses testified that sometime in July, August, or September of 1970, on one occasion the witnesses heard plaintiff and defendant shouting or arguing in angry voices but could not hear what was said. This was the sole and only corroboration of any kind to establish the basic allegation of extreme cruelty.

Section 42-335, R. R. S. 1943, provides: "No decree of divorce and of the nullity of a marriage shall be made solely on the declaration, confessions or admissions of the parties, but the court shall, in all cases, require other satisfactory evidence of the facts alleged in the petition for that purpose." That statute, word for word, has remained unchanged since 1866. The purpose of the statute was to prevent obtaining divorces by collusion or fraud. See Spray v. Spray, 156 Neb. 774, 57 N. W. 2d 926. It may well be that the statute has generated more collusion and fraud than it may have prevented.

In several jurisdictions there are statutes which expressly or impliedly require corroboration. However, at common law and in the great majority of the jurisdictions, it is held that in the absence of a statute to the contrary, there is no hard and fast rule requiring that there be corroboration of plaintiff's testimony concerning the ground for divorce. See Annotation, Necessity and Sufficiency of Corroboration of Plaintiff's Testimony Concerning Ground for Divorce, 15 A. L. R. 2d 170.

The variance in judicial rules adopted by the courts in the absence of statute suggests the wide variety of possible statutory or judicial solutions. The corroborative evidence statute involves issues which are clearly policy matters for legislative determination. The fact that the present statute has been in effect for over 100 years might well suggest a reexamination by the Legislature. Legislative divorce policy of an era before Nebraska became a state may or may not reflect her modern mood.

The trial court here reached a practical and reasonable solution. We are reluctant to upset that determination and to blot out a logical view of practical reality, but the statute leaves us no alternative. That portion of the judgment dismissing defendant's cross-petition is affirmed. The judgment granting plaintiff an absolute divorce is reversed.

AFFIRMED IN PART, AND IN PART REVERSED.