monthly support total in worksheet 1 and giving Kristi a credit for the same amount. We reverse the judgment of the trial court and remand the cause for a calculation of child support consistent with this opinion.

Reversed and remanded with directions.

State of Nebraska, appellee, v.
Anoroy Y. Loyuk, appellant.
___ N.W.2d ___

Filed January 30, 2015.    No. S-13-806.

1. **Constitutional Law: Statutes: Jury Instructions: Appeal and Error.** Statutory interpretation, the constitutionality of a statute, and whether jury instructions are correct are questions of law, which an appellate court resolves independently of the trial court.

2. **Constitutional Law: Statutes: Presumptions.** A statute is presumed to be constitutional, and all reasonable doubts are resolved in favor of its constitutionality.

3. **Criminal Law: Statutes: Legislature: Intent.** In reading a penal statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

4. **Statutes: Legislature: Intent: Appeal and Error.** An appellate court will not look beyond a statute to determine the legislative intent when the words are plain, direct, or unambiguous.

5. **Administrative Law: Public Officers and Employees: Prisoners.** The control requirement in Neb. Rev. Stat. § 28-322(2)(a) (Reissue 2008) applies only to those nonemployees or noncontractors to whom the Department of Correctional Services has authorized or delegated control over an inmate or an inmate's activities.

6. **Sexual Assault: Prisoners: Words and Phrases.** Under Neb. Rev. Stat. § 28-322.02 (Reissue 2008), the word "subject" means to cause to undergo the action of something specified.

7. **Constitutional Law: Statutes.** An attack on a statute's overbreadth is a claim that it impermissibly infringes on a constitutionally protected right.

8. ____: ____. A statute is unconstitutionally overbroad only if its overbreadth is substantial, i.e., when the statute would be unconstitutional in a substantial portion of the situations to which it is applicable.

9. **Constitutional Law: Statutes: Appeal and Error.** When a defendant challenges both the overbreadth and vagueness of a law, an appellate court analyzes overbreadth first.

10. **Due Process.** The Due Process Clause contains a substantive component that relates to the content of the statute specifying when a right can be lost or impaired.

11.   ____. Under the Due Process Clause, a statute that infringes upon a "fundamental liberty interest" must be narrowly tailored to serve a compelling state interest.

12.   ____. Under the Due Process Clause, a statute that infringes upon a liberty interest that is not fundamental must only be rationally related to a legitimate state purpose.

13.   **Constitutional Law: Assault.** A court applies strict scrutiny to a "direct and substantial interference" with intimate associations, while lesser intrusions are subject only to rational basis review.

14.   ____: ____. A direct and substantial interference with intimate associations exists if a large portion of those affected by the rule are absolutely or largely prevented from forming such associations or if those affected by the rule are absolutely or largely prevented from forming intimate associations with a large portion of the otherwise eligible population.

15.   **Criminal Law: Sexual Assault: Prisoners.** The statutes defining the crime of sexual abuse of an inmate or parolee do not directly and substantially interfere with the right to intimate association.

16.   **Constitutional Law: Criminal Law: Statutes.** The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.

17.   **Constitutional Law: Statutes: Legislature: Notice.** The more important aspect of the void-for-vagueness doctrine is not actual notice, but the requirement that a legislature establish minimal guidelines to govern law enforcement.

18.   **Constitutional Law: Statutes: Standing.** To have standing to assert a claim of vagueness, a defendant must not have engaged in conduct which is clearly prohibited by the questioned statute.

19.   **Equal Protection: Statutes.** Under the Equal Protection Clause, legislative classifications involving either a suspect class or a fundamental right are analyzed with strict scrutiny, and legislative classifications not involving a suspect class or fundamental right are analyzed using rational basis review.

20.   **Equal Protection.** The initial inquiry in an equal protection analysis is whether the challenger is similarly situated to another group for the purpose of the challenged government action.

21.   **Jury Instructions: Appeal and Error.** All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.

22.   **Jury Instructions: Proof: Appeal and Error.** The appellant has the burden to show that a questioned jury instruction prejudiced him or otherwise adversely affected his substantial rights.

23.   **Arrests.** Whether an individual is in custody depends on all the circumstances surrounding the interrogation.

24.   ____. The test for whether an individual is in custody is whether a reasonable person in the defendant's position would have felt free to leave.

25.   **Arrests: Police Officers and Sheriffs.** In determining whether an individual is in custody, circumstances relevant to whether a reasonable person in the defendant's position would have felt free to leave include the location of the

interrogation, whether the defendant initiated contact with the police, and whether the police told the defendant he was free to terminate the interview and leave at any time.

Appeal from the District Court for Lancaster County: Paul D. Merritt, Jr., Judge. Affirmed.

Dennis R. Keefe, Lancaster County Public Defender, Valerie McHargue, and Paul E. Cooney for appellant.

Jon Bruning, Attorney General, Kimberly A. Klein for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Per Curiam.

## I. SUMMARY

A jury convicted Anoroy Y. Loyuk of first degree sexual abuse of an inmate or parolee. First degree sexual abuse of an inmate or parolee involves a statutorily defined "person" associated with the Department of Correctional Services (DCS) who subjects an inmate or parolee to sexual penetration with or without the inmate or parolee's consent. Witnesses testified, and Loyuk admits, that while employed as an officer by the DCS, Loyuk had sex with R.S., a parolee. Loyuk argues that the evidence was insufficient to support his conviction because it did not show that he had control over R.S. If the State did not have to prove such control, Loyuk argues that the statutes are unconstitutionally vague and violate his rights to intimate association and equal protection. We conclude that the evidence was sufficient to support Loyuk's conviction and that the statutes did not violate his constitutional rights.

## II. BACKGROUND

### 1. Factual Background

The DCS employed Loyuk as a corporal at the Community Corrections Center—Lincoln (CCCL). The CCCL is a transitional facility where inmates from more secured facilities serve time before being released on parole. As a corporal, Loyuk's responsibilities included manning the control center,

transporting inmates, conducting searches, and maintaining the "overall security of the facility."

From September 2011 to January 2012, R.S. was an inmate at the CCCL. While incarcerated, R.S. had contact with Loyuk while she was "in chow" or as Loyuk delivered mail. R.S. testified that Loyuk, who she identified as a "guard," was "one of the nice guys" but denied that they developed a friendship or romantic interest during her incarceration.

R.S. was paroled on January 25, 2012, and moved to a halfway house. Her parole officer was not Loyuk or any other person employed at the CCCL. Loyuk had no authority to punish R.S. for parole violations or other misconduct.

A month after she was paroled, R.S. had a chance encounter with Loyuk in a Lincoln grocery store. While shopping, R.S. spotted Loyuk, who was wearing jeans and a T-shirt. R.S. started a conversation, and the two chatted about "how things were going." The conversation lasted for 30 minutes to an hour and concluded with an exchange of mailing addresses. A correspondence later developed.

Eventually, Loyuk revealed to R.S. that "he was having more feelings for [her] than just a friendship," and R.S. testified that the feeling was mutual. They had sex several times at Loyuk's house and later at two motels in March and April 2012.

R.S. testified that Loyuk did not pressure or coerce her into having sex with him. If anything, R.S. said that "I was probably the one pressuring him most of the time." R.S. testified that she and Loyuk were engaged at the time of trial.

After his relationship with R.S. became intimate, Loyuk approached Ross Peterson, a lieutenant at the CCCL, and said he wanted to talk. Loyuk told Peterson that an inmate assigned to the CCCL had given him information about misconduct committed by other inmates. After questioning by Peterson, Loyuk reluctantly identified the informant as R.S. Peterson had concerns and contacted the CCCL's warden. A Nebraska State Patrol officer interviewed Loyuk, and he admitted to having sex with R.S. about 15 times while she was on parole and he was employed at the CCCL. Loyuk was arrested after the interview concluded.

## 2. Procedural Background

The State charged Loyuk with first degree sexual abuse of an inmate or parolee. The district court entered a not guilty plea after Loyuk stood mute at the arraignment.

Loyuk moved to quash, arguing that the definition of "person" in Neb. Rev. Stat. § 28-322(2)(a) (Reissue 2008) was vague and overbroad, and that a conviction would violate his "rights to freedom of intimate association, due process, privacy, and Equal Protection under the First, Fifth, and Fourteenth Amendments." The court determined that § 28-322(2)(a) was not vague and that it applied to any DCS employee—not just those who had control over an inmate or parolee. Any imposition on Loyuk's right to intimate association, the court reasoned, was justified by the State's interest in protecting inmates and parolees from sexual intercourse with DCS employees. The court concluded that Loyuk's equal protection claim was meritless because there was a rational basis to distinguish married from unmarried couples.

After the trial concluded, Loyuk offered a number of proposed jury instructions. Loyuk submitted that the jury had to find that R.S. "was an inmate or parolee under the control of . . . Loyuk" and that "person" should be defined as an employee of the DCS who had control over an inmate or an inmate's activities. Loyuk proposed that the word "subject" be defined as to "bring under control or dominion," "subjugate," "make (as oneself) amenable to the discipline and control of a superior," "make liable," "predispose," and "to cause or force to undergo or endure." Loyuk also argued the court should instruct the jury that under Neb. Rev. Stat. § 29-4504 (Reissue 2008), it could draw an adverse inference from the lack of an electronic recording of his interview with the Nebraska State Patrol officer. Rejecting Loyuk's proposals, the court instructed the jury that the following were the elements of the offense: (1) Loyuk "intentionally subjected [R.S.] to sexual penetration"; (2) Loyuk was "employed by the [DCS]"; (3) R.S. was "under parole supervision"; and (4) the events occurred during March and April 2012 in Lancaster County. The court declined to instruct the jury that it could draw an adverse inference from the absence of an

electronic recording because Loyuk was not in custody when law enforcement interviewed him.

The jury found Loyuk guilty of first degree sexual abuse of an inmate or parolee. The court sentenced Loyuk to 18 months' probation.

## III. ASSIGNMENTS OF ERROR

Loyuk assigns, renumbered and restated, that (1) the evidence was insufficient; (2) the statutes defining first degree sexual abuse of an inmate or parolee are "overbroad, vague and generally violative of [his] rights to freedom of intimate association, due process, privacy and Equal Protection under the First, Fifth and Fourteenth Amendments"; and (3) the district court incorrectly or inadequately instructed the jury on the elements of the offense, the definition of "person," the definition of "subject," and the permissibility of an adverse inference based on the absence of an electronic recording of his interview with law enforcement.

## IV. STANDARD OF REVIEW

[1] Statutory interpretation, the constitutionality of a statute, and whether jury instructions are correct are questions of law, which an appellate court resolves independently of the trial court.[1]

[2] A statute is presumed to be constitutional, and all reasonable doubts are resolved in favor of its constitutionality.[2]

## V. ANALYSIS

### 1. SUFFICIENCY OF THE EVIDENCE

Loyuk argues that the evidence is insufficient because it did not show that he had control over R.S. or her activities at the time sexual penetration occurred. Additionally, Loyuk argues that he did not "subject" R.S. to sexual penetration because her participation was voluntary. The State does not dispute that Loyuk lacked control over R.S. when their relationship

---

[1] See, *Rodgers v. Nebraska State Fair*, 288 Neb. 92, 846 N.W.2d 195 (2014); *State v. Ely*, 287 Neb. 147, 841 N.W.2d 216 (2014); *Banks v. Heineman*, 286 Neb. 390, 837 N.W.2d 70 (2013).

[2] *Banks v. Heineman, supra* note 1.

began, and there is no evidence that Loyuk coerced R.S. So, Loyuk's sufficiency assignment raises issues of statutory interpretation.

[3,4] In reading a penal statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[3] We will not look beyond a statute to determine the legislative intent when the words are plain, direct, or unambiguous.[4]

Under Neb. Rev. Stat. § 28-322.02 (Reissue 2008), "[a]ny person who subjects an inmate or parolee to sexual penetration is guilty of sexual abuse of an inmate or parolee in the first degree." The term "inmate or parolee" is defined in § 28-322(1) as "any individual confined in a facility operated by the [DCS] or a city or county jail facility or under parole supervision." Section 28-322(2)(a) defines "person" as

> an individual employed by the [DCS] or by the Office of Parole Administration, including any individual working in central administration of the department, any individual working under contract with the department, and any individual, other than an inmate's spouse, to whom the department has authorized or delegated control over an inmate or an inmate's activities.

Loyuk does not dispute that he sexually penetrated R.S. when she was a parolee and he was an employee of the DCS. But he contends that the control requirement in the last clause of § 28-322(2)(a) applies to all the "persons" listed under § 28-322(2)(a). Because he did not have control over R.S., he argues that the statute does not include him. We disagree.

In § 28-322(2)(a), the participle "including" modifies the noun phrase "individual employed" by the DCS or the Office of Parole Administration. But a plain reading of the statute shows that "including" is only used to clarify that individuals working in the DCS' central administration are employees subject to criminal liability under § 28-322.02.

---

[3] *State v. Robbins*, 253 Neb. 146, 570 N.W.2d 185 (1997).

[4] *Coffey v. Planet Group*, 287 Neb. 834, 845 N.W.2d 255 (2014).

Although the phrase "any individual working under contract with the department" also follows the word "including," contractors are clearly not DCS employees. And if the other individuals listed in the third item were DCS employees, the Legislature would not have listed them separately. So, in § 28-322(2)(a), the Legislature obviously set out three different groups of individuals who are subject to criminal liability for having sexual contact with an inmate or parolee: (1) any employee of the DCS or the Office of Parole Administration, including individuals working in central administration; (2) any individual working under contract with the DCS; and (3) any individual, other than an inmate's spouse, to whom the DCS has authorized or delegated control over an inmate or an inmate's activities.

[5] In short, the control requirement in § 28-322(2)(a) applies only to those nonemployees or noncontractors to whom the DCS has authorized or delegated control over an inmate or an inmate's activities. It does not apply to DCS employees.

[6] Nor does Loyuk's argument persuade us that he did not "subject" R.S. to sexual penetration. Loyuk seems to argue that the word "subjects," as used in § 28-322.02, has an element of coercion. The definitions he proposes include "'bring under control or dominion'" or "'force to undergo or endure.'"[5] These definitions cannot be squared with the statement in Neb. Rev. Stat. § 28-322.01 (Reissue 2008) that the consent of the inmate or parolee is not a defense. The plain meaning of "subject" is "to cause to undergo the action of something specified."[6] Here, the thing specified is sexual penetration and Loyuk caused R.S. to undergo this action by participating in the sexual act.

## 2. CONSTITUTIONALITY

Loyuk argues that the statutes defining the offense of sexual abuse of an inmate or parolee are unconstitutional on three

---

[5] Brief for appellant at 30-31.

[6] Webster's Encyclopedic Unabridged Dictionary of the English Language 1415 (1989).

different grounds. First, Loyuk argues that they are overbroad because they burden the "fundamental right to intimate association that is rooted in the First, Third, Fourth, Fifth, Ninth and Fourteenth Amendments to the U.S. Constitution and their state counterparts."[7] Second, Loyuk argues that the definition of "person" in § 28-322(2)(a) is unconstitutionally vague because it is not clear whether the requirement of control in the last clause of that subsection applies to all persons. Finally, Loyuk argues that the statutes violate his right to equal protection because the State infringed his fundamental right to intimate association and because § 28-322(2)(a) draws a classification between married and unmarried individuals. We conclude that each of these arguments is without merit.

### (a) Overbreadth

[7-9] An attack on a statute's overbreadth is a claim that it impermissibly infringes on a constitutionally protected right.[8] A statute is unconstitutionally overbroad only if its overbreadth is substantial, i.e., when the statute would be unconstitutional in a substantial portion of the situations to which it is applicable.[9] When, as here, a defendant challenges both the overbreadth and vagueness of a law, we analyze overbreadth first.[10]

[10-12] Although Loyuk urges us to find a right to intimate association emanating from the penumbras of the Bill of Rights, this is a claim to liberty that turns on the substantive guarantees of the Due Process Clause of the 14th Amendment.[11] The Due Process Clause contains a substantive component[12] that relates to the content of the statute specifying when a right can be lost or impaired.[13] Under the Due Process Clause, a statute

---

[7] Brief for appellant at 15.

[8] See *State v. Green*, 287 Neb. 212, 842 N.W.2d 74 (2014).

[9] See *id*.

[10] See *State v. Scott*, 284 Neb. 703, 824 N.W.2d 668 (2012).

[11] See *Flaskamp v. Dearborn Public Schools*, 385 F.3d 935 (6th Cir. 2004).

[12] See, e.g., *State v. Wiedeman*, 286 Neb. 193, 835 N.W.2d 698 (2013).

[13] *Staley v. City of Omaha*, 271 Neb. 543, 713 N.W.2d 457 (2006).

that infringes upon a "fundamental liberty interest" must be narrowly tailored to serve a compelling state interest.[14] A statute that infringes upon a liberty interest that is not fundamental must only be rationally related to a legitimate state purpose.[15] Fundamental liberties recognized by the U.S. Supreme Court include the right to marry, have children, direct the education and upbringing of one's children, marital privacy, contraception, and bodily integrity.[16]

[13,14] Assuming that the federal Constitution protects Loyuk's relationship with R.S., the State argues that rational basis review applies unless Loyuk's conviction "'directly and substantially'" interfered with his right to intimate association.[17] A court applies strict scrutiny to a "'direct and substantial interference'" with intimate associations, while lesser intrusions are subject only to rational basis review.[18] A direct and substantial interference with intimate associations exists if "a large portion of those affected by the rule are absolutely or largely prevented" from forming such associations or if those affected by the rule are "'absolutely or largely prevented from [forming intimate associations] with a large portion of the otherwise eligible population . . . .'"[19]

In analogous circumstances, courts have held that the intimate association rights of police officers are not directly and substantially interfered with by policies prohibiting intimate contact with certain individuals. For example, in *Anderson v. City of LaVergne*,[20] the plaintiff, a police officer, had a romantic relationship with an administrative assistant for the police department. Department policy prohibited intraoffice

---

[14] *Citizens for Eq. Ed. v. Lyons-Decatur Sch. Dist.*, 274 Neb. 278, 293 739 N.W.2d 742, 756 (2007).

[15] See, e.g., *id.*

[16] See *Washington v. Glucksberg*, 521 U.S. 702, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997).

[17] Brief for appellee at 14.

[18] *Anderson v. City of LaVergne*, 371 F.3d 879, 882 (6th Cir. 2004), quoting *Akers v. McGinnis*, 352 F.3d 1030 (6th Cir. 2003).

[19] *Id.* (alteration in original).

[20] *Anderson v. City of LaVergne, supra* note 18.

dating between employees of different ranks. After the plaintiff refused to end the relationship, the chief of police initially terminated the plaintiff's employment before permitting him to resign. The court held that the policy did not directly and substantially interfere with the plaintiff's right to intimate association because he "continued to enjoy the ability to form intimate associations with anyone other than fellow police department employees of differing rank."[21]

[15] We conclude that the statutes defining the crime of sexual abuse of an inmate or parolee do not directly and substantially interfere with Loyuk's right to intimate association. Loyuk's freedom to intimately associate with prisoners and parolees was curtailed, but he was not largely or absolutely prevented from forming intimate associations with the otherwise eligible population. For a "person" under § 28-322(2)(a), the dating pool has not been substantially reduced. Accordingly, rational basis review applies even if Loyuk's relationship with R.S. has a constitutional dimension.

The statutes at issue here survive rational basis review. There can be little question that the State has a legitimate interest in protecting inmates and parolees from sexual abuse. And prohibiting sexual contact between these individuals and employees of the DCS is rationally related to this interest.

### (b) Void for Vagueness

[16,17] Loyuk also argues that § 28-322(2)(a) is void for vagueness. The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.[22] The more important aspect of the void-for-vagueness doctrine is not actual notice, but the requirement that a legislature establish minimal guidelines to govern law enforcement.[23]

---

[21] *Id*. at 882. See, also, *Bautista v. County of Los Angeles*, 190 Cal. App. 4th 869, 118 Cal. Rptr. 3d 714 (2010).

[22] *State v. Green, supra* note 8.

[23] *Id*.

[18] To have standing to assert a claim of vagueness, a defendant must not have engaged in conduct which is clearly prohibited by the questioned statute.[24] A litigant cannot maintain that the statute is vague when applied to the conduct of others.[25] We will not examine the vagueness of the law as it might apply to the conduct of persons not before the court.[26]

Loyuk's vagueness argument centers on the definition of "person" in § 28-322(2)(a). By its plain language, that statute defines "person" to include any employee of the DCS. There is no question that Loyuk was an employee of the DCS. Because his conduct was clearly prohibited, Loyuk is without standing to assert a vagueness claim.

### (c) Equal Protection

[19,20] Loyuk argues that his conviction violated his right to equal protection because (1) a fundamental liberty interest was involved and (2) § 28-322(2)(a) draws a classification between married and unmarried individuals. Under the Equal Protection Clause, legislative classifications involving either a suspect class or a fundamental right are analyzed with strict scrutiny, and legislative classifications not involving a suspect class or fundamental right are analyzed using rational basis review.[27] The initial inquiry in an equal protection analysis is whether the challenger is similarly situated to another group for the purpose of the challenged government action.[28] Absent this threshold showing, there is not a viable equal protection claim.[29] In other words, dissimilar treatment of dissimilarly situated persons does not violate equal protection rights.[30]

We conclude that § 28-322(2)(a) did not violate Loyuk's right to equal protection. As discussed above, Loyuk was

---

[24] See *State v. Scott, supra* note 10.

[25] *Id.*

[26] *Id.*

[27] See *Sherman T. v. Karyn N.*, 286 Neb. 468, 837 N.W.2d 746 (2013).

[28] See *id.*

[29] See *id.*

[30] See *id.*

not deprived of a fundamental right. And, to the extent § 28-322(2)(a) draws a marital status classification, Loyuk does not have a viable equal protection claim because he is not similarly situated to married individuals.[31] Unlike Loyuk and R.S.' informal sexual relationship, marriage requires the competence[32] and consent[33] of the parties—a key consideration because the Legislature was concerned that inmates and parolees are "not legally empowered to give 'consent.'"[34] Persons who marry enter into a new social status,[35] and the State is an implied party to their union.[36] In this context, the legislative calculus does not need to be the same for married and unmarried individuals.

### 3. Jury Instructions

[21,22] Loyuk argues that the district court incorrectly instructed the jury on the elements of the offense. He also argues that the court erred by not giving separate instructions for the definition of "person," the definition of "subject," and the permissibility of an adverse inference based on the absence of an electronic recording of Loyuk's statement to the State Patrol officer. We read all the jury instructions together,[37] and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.[38] The appellant has the burden to show that a questioned jury instruction prejudiced him or otherwise adversely affected his substantial rights.[39]

---

[31] See, e.g., *State ex rel. Jarvela v. Burke*, 678 N.W.2d 68 (Minn. App. 2004).

[32] See Neb. Rev. Stat. § 42-103 (Reissue 2008).

[33] See, e.g., *Zutavern v. Zutavern*, 155 Neb. 395, 52 N.W.2d 254 (1952).

[34] Introducer's Statement of Intent, L.B. 511, Judiciary Committee, 96th Leg., 1st Sess. (Jan. 28, 1999).

[35] See *Edmunds v. Edwards*, 205 Neb. 255, 287 N.W.2d 420 (1980).

[36] See *Weber v. Weber*, 200 Neb. 659, 265 N.W.2d 436 (1978).

[37] *State v. Merchant*, 288 Neb. 439, 848 N.W.2d 630 (2014).

[38] *Id.*

[39] *Id.*

The State did not need to prove that Loyuk controlled R.S. or her activities, and we have rejected Loyuk's interpretation of the word "subject." The instructions proposed by Loyuk were not an accurate statement of the law, and he was not entitled to have them given to the jury. Nor was it error for the district court to decline to give the jury a verbatim copy of § 28-322(2)(a). Taken as a whole, the court's instructions adequately stated the elements of the offense.

Regarding Loyuk's argument about the lack of an electronic recording, Neb. Rev. Stat. § 29-4503 (Reissue 2008) generally requires that statements made during a "custodial interrogation" that relate to crimes involving sexual assault must be electronically recorded. If a law enforcement officer does not comply with this mandate, § 29-4504 provides that "a court shall instruct the jury that they may draw an adverse inference for the law enforcement officer's failure to comply with such section."

[23-25] The phrase "custodial interrogation," under Neb. Rev. Stat. § 29-4502(1) (Reissue 2008), "has the meaning prescribed to it under the Fourth and Fifth Amendments to the Constitution of the United States and Article I, sections 3 and 7, of the Constitution of Nebraska, as interpreted by the United States Supreme Court and the Nebraska Supreme Court." We have said that whether an individual is in custody depends on all the circumstances surrounding the interrogation.[40] In making that determination, the test is whether a reasonable person in the defendant's position would have felt free to leave.[41] If not, then a defendant is in custody.[42] Circumstances that are relevant to this inquiry include the location of the interrogation, whether the defendant initiated contact with the police, and whether the police told the defendant he was free to terminate the interview and leave at any time.[43]

---

[40] *State v. Bauldwin*, 283 Neb. 678, 811 N.W.2d 267 (2012).

[41] See *id*.

[42] See *id*.

[43] *Id*.

A Nebraska State Patrol officer interviewed Loyuk in an administrative building on the Lincoln Regional Center campus. The officer testified that the building was "a strictly administrative building" and did not have holding facilities for inmates. The officer, dressed in plainclothes, interviewed Loyuk alone in a conference room. After identifying himself as a sergeant with the Nebraska State Patrol and reading a *Miranda* warning,[44] he proceeded to interview Loyuk without recording the conversation. Loyuk was not handcuffed or otherwise restrained during the interview, and the officer advised him that he did not have to answer questions and "didn't have to be there with [him]."

We agree with the district court that Loyuk was not entitled to an instruction under § 29-4504 because he was not in custody. The interview occurred in an administrative building, and the officer told Loyuk that he could end the interview and leave. Loyuk did not initiate contact with the Nebraska State Patrol, but he did initiate a conversation about R.S. with a corrections officer at the CCCL. Considering all the circumstances involved, a reasonable person in Loyuk's position would have felt free to leave.

## VI. CONCLUSION

We conclude that the evidence was sufficient to support Loyuk's conviction, that his constitutional rights were not violated, and that the district court adequately instructed the jury. Accordingly, we affirm.

AFFIRMED.

---

[44] See *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).