STATE OF NEBRASKA, APPELLEE, V.
ROBERT LYLE ROBBINS, APPELLANT.
559 N.W.2d 789

Filed January 28, 1997.   No. A-96-251.

Thomas J. Garvey, Sarpy County Public Defender, and Gregory A. Pivovar for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

HANNON, MUES, and INBODY, Judges.

HANNON, Judge.

Robert Lyle Robbins appeals from his convictions of two counts of attempted kidnapping, alleging that the evidence is insufficient to support the convictions. We conclude that the State failed to prove that Robbins intended to terrorize his victims, as the State charged in the information, and thus, we reverse the convictions and sentences.

## FACTUAL BACKGROUND

Robbins' only assignment of error is that the evidence is insufficient to support his convictions. As such, the facts as adduced at trial will be related below in the light most favorable to the State.

*Incident with Chasity C.*

In the late afternoon on June 15, 1995, Robbins approached Chasity C., an 11-year-old girl, who was walking the 8 or 10

blocks from her grandmother's house to the school where her brother was at baseball practice. Chasity's mother and younger sister were planning on driving to the practice field and were about 5 minutes behind Chasity. Chasity testified that a man in an older car pulled alongside of her and that the man asked her if she had seen his lost dog. He then drove away. The man returned a "couple of minutes or seconds later" and approached her a second time, driving again in the same direction as Chasity was walking. The man stated: " 'Can you please help me? I really need this dog. My daughter is really sad.' " He offered her $100 to get into his car and help him find his dog. She repeatedly said no. Robbins then positioned his car in such a way that Chasity could not cross the street without going around his car. Robbins asked again for her to assist him in finding his dog. At trial, Chasity described his tone of voice as a "little bit under yelling." Robbins abruptly sped off. Chasity then ran to the practice field and related the story to her mother when she arrived. Chasity's mother contacted the police.

Chasity testified that she felt scared, that she had never seen the man before, and that she did not make eye contact with him during this incident because the "DARE" program in which she participated at school taught her to avoid eye contact and not go with strangers.

Brian Richards, an off-duty investigator for the Sarpy County sheriff's office, happened to be driving home from the grocery store with his wife when he noticed Robbins' car blocking Chasity's path across the street. Richards thought this was odd, and he noticed that Chasity, whom he did not know, looked frightened. He waited at an intersection for approximately 40 seconds, and he wrote down the license plate number of the car and noted Robbins' features. Robbins was leaning over the seat and talking to Chasity through the open passenger window. Robbins apparently noticed that Richards was watching him, and he sped off. Chasity immediately ran off.

*Incident with Taylor S.*

On the same day, at approximately 9 p.m., Taylor S., a 5-year-old girl, obtained her parents' permission to go to a school playground, which was next door to their home, to play.

Taylor's parents were in their yard working on their automobile, and it was still light. Taylor was approached by Robbins, who said, " '[C]ome in my car,' " and he would give her "five bucks." She testified that she responded no. She knew that she should not talk to strangers because she had watched a video entitled "Don't Talk to Strangers" featuring the "Berenstain Bears." Taylor then went to "the little house" and "the swings." Robbins jumped the fence, got in his car, and drove off, only to approach her again a short time later. She repeatedly refused to go with him, got on her bike, and went home and told her parents. Taylor testified on cross-examination that Robbins never touched her, never yelled at her, and never stated that he was going to hurt her.

Lisa Sales, a neighbor, happened to be sitting outside on her porch and witnessed the incident between Robbins and Taylor. She testified that she watched Robbins jump the fence, approach Taylor, and walk back to his car. Sales testified that Robbins motioned with his head as if to say " '[C]ome on.' " She saw him drive past the playground a second time and then approach Taylor again. Finding Robbins' behavior peculiar, Sales approached the playground, and he fled. Sales alerted Taylor's parents, and Sales and Taylor's mother got into a car and chased Robbins in his car, but did not catch him.

The quick actions of Richards, Sales, and the children's parents enabled the police to identify Robbins as the man who attempted to have Chasity and Taylor get into his car. This evidence is clearly sufficient to support a finding that Robbins was the actor in this case, and we are therefore not going to detail the investigation which enabled the police to locate Robbins or the evidence of the several witnesses which caused Robbins to be identified as the person who attempted to get these children into his automobile.

Robbins was arrested, and an information was filed, charging him with two counts of attempted kidnapping, each attempt a Class III felony. In each charge, the State alleged Robbins attempted to commit the crime of kidnapping "with the intent to terrorize." A bench trial was had, and Robbins was found guilty on both counts. The court sentenced him to a term of 2 to 5 years' imprisonment on each count, with the sentences to run

consecutively. Robbins timely appeals from his convictions and sentences.

## ASSIGNMENT OF ERROR

Robbins' only allegation on appeal is that the trial court erred in finding the evidence sufficient to sustain convictions of attempted kidnapping.

## STANDARD OF REVIEW

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same. In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Beethe*, 249 Neb. 743, 545 N.W.2d 108 (1996); *State v. Brozovsky*, 249 Neb. 723, 545 N.W.2d 98 (1996).

## DISCUSSION

The information charged Robbins with two counts of attempted kidnapping with the intent to terrorize. "A person shall be guilty of an attempt to commit a crime if he . . . (6) Intentionally engages in conduct which, under the circumstances as he believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his commission of the crime." Neb. Rev. Stat. § 28-201(1) (Reissue 1995). Neb. Rev. Stat. § 28-313(1) (Reissue 1995) provides:

A person commits kidnapping if he abducts another or, having abducted another, continues to restrain him with intent to do the following:
(a) Hold him for ransom or reward; or
(b) Use him as a shield or hostage; or
(c) Terrorize him or a third person; or
(d) Commit a felony; or
(e) Interfere with the performance of any government or political function.

In each of the counts contained in the information, the State alleges that Robbins attempted the kidnapping "with the intent to terrorize, in violation of section 28-201, R.R.S. Nebraska." Only Robbins' alleged intent to terrorize the children or some third person is available to support the convictions. Evidence solely tending to show Robbins attempted to abduct the children to hold them for ransom or as a shield, or to commit a felony, or to interfere with the performance of the government is immaterial. The principal question in this appeal is whether the evidence supports a finding that Robbins attempted to abduct the children "with the intent to terrorize" them or a third person.

As the above statute shows, one of the elements of attempted kidnapping is an attempt to abduct the children. Neb. Rev. Stat. § 28-312(2) (Reissue 1995) defines "abduct" as "to restrain a person with intent to prevent his liberation by: (a) Secreting or holding him in a place where he is not likely to be found; or (b) Endangering or threatening to endanger the safety of any human being." Robbins does not argue that the evidence is insufficient to show that he intended to abduct the children, and therefore, we will not consider whether the evidence supports the conclusion that he attempted to abduct them.

In *State v. Miller*, 216 Neb. 72, 74, 341 N.W.2d 915, 917 (1983), the Supreme Court stated: "Kidnapping requires proof of a specific intention which is not an element of false imprisonment. An abduction might occur under terrorizing circumstances even though there was no intention on the part of the abductor to terrorize the victim." It is this specific intent to terrorize which Robbins argues is not supported by the evidence.

While Nebraska case law has yet to articulate a specific meaning for the phrase "intent to terrorize," many jurisdictions have. The North Carolina Court of Appeals has held that the "[i]ntent to terrorize means more than an intent to put another in fear. It means an intent to '[put] that person in some high degree of fear, a state of intense fright or apprehension.'" *State v. Claypoole*, 118 N.C. App. 714, 717, 457 S.E.2d 322, 324 (1995). Minnesota courts have held that "[t]errorize means to cause extreme fear by use of violence or threats." *State v. Schweppe*, 306 Minn. 395, 400, 237 N.W.2d 609, 614 (1975). In

Pennsylvania, at least one court has held that "terrorizing" means to reduce to terror by violence or threats and that "terror" means an extreme fear or fear that agitates body and mind. *Com. v. Green*, 287 Pa. Super. 220, 429 A.2d 1180 (1981). Other courts have looked to dictionary definitions to determine the phrase's common meaning. See, *State v. Dyson*, 238 Conn. 784, 680 A.2d 1306 (1996) (defining "terrorize" as to fill with terror or anxiety and defining "terror" as state of intense fright or apprehension; stark fear); *Teer v. State*, 895 S.W.2d 845 (Tex. Crim. App. 1995) (holding that "terror" is defined as to fill with intense fear or to coerce by threat or force and that fear of anticipated infliction of imminent bodily injury or death is sufficient to indicate intent to terrorize); *State v. Bodenschatz*, 62 Or. App. 606, 662 P.2d 1 (1983) (holding that Webster's defines "terror" as meaning intense fear; quality of causing dread; terribleness).

We conclude that while there are no Nebraska cases defining "intent to terrorize," the definitions set forth above are consistent with Nebraska cases which examined whether specific acts by defendants were intended to terrorize the victims.

For example, in *State v. Maeder*, 229 Neb. 568, 428 N.W.2d 180 (1988), the Supreme Court concluded that the fact that the defendant terrorized the victim by pointing a gun at her and threatening to kill her was sufficient evidence to support the claim that the defendant abducted the victim with the intent to terrorize her. In *State v. Masters*, 246 Neb. 1018, 524 N.W.2d 342 (1994), the court concluded the evidence was sufficient to establish that the defendant abducted and restrained the victim with the intent to terrorize him. In support of this conclusion, the court related that the defendant "kept his weapon pointed at [the victim] for much of the time, showed [the victim] that the weapon was loaded, struck [the victim] in the face, [and] threatened '"to blow [the victim's] guts all over the back seat"'" unless [the victim] talked." *Id.* at 1024, 524 N.W.2d at 347. In *Masters*, there was direct positive evidence of terroristic threats by the defendant, but there is no similar evidence in the instant case.

Additionally, Neb. Rev. Stat. § 28-311.01(1) (Reissue 1995) defines "terroristic threats" as follows:

A person commits terroristic threats if he or she threatens to commit any crime of violence:

(a) With the intent to terrorize another;

(b) With the intent of causing the evacuation of a building, place of assembly, or facility of public transportation; or

(c) In reckless disregard of the risk of causing such terror or evacuation.

As applied to the situation in this case, terroristic threats could be only threats to commit a crime of violence with the intent to terrorize another.

As stated previously, kidnapping is a specific intent crime. *State v. Masters, supra.* "Intent" is the state of the actor's mind when the actor's conduct occurs. *Id.* The intent operative at the time of an action may be inferred from the words and acts of an accused and from the facts and circumstances surrounding the conduct. *Id.; State v. Meyer*, 236 Neb. 253, 460 N.W.2d 656 (1990). We are unable to find any circumstantial evidence which would justify a finding that Robbins intended to abduct the children to terrorize them.

In the instant case, there is no evidence of what Robbins intended to do with the children. The State argues that Robbins' approaching children and attempting to induce them to leave with him in and of itself showed an intent to terrorize, which is evidenced by the children's testimony that they were both scared. Even the trial judge did not seem to recognize such an intent when he stated at the sentencing hearing that "[a]ll I could surmise, because of your financial situation you were looking for a way to kidnap somebody to gain some money." Certainly this does not reflect an intent to terrorize, as contemplated by the charges against Robbins.

We are troubled by Robbins' actions, as we, like most members of our society, recognize that children who are picked up in automobiles by strangers are frequently very seriously injured or killed. However, "in Nebraska all crimes are statutory, and no act is criminal unless the Legislature has in express terms declared it to be so." *State v. Schneckloth, Koger, and Heathman*, 210 Neb. 144, 148, 313 N.W.2d 438, 441 (1981).

We find no statute in Nebraska that appears to allow prosecution of Robbins for a crime carrying a penalty that is likely to deter activity such as Robbins committed in this case. Such a law seems desirable. Several states have laws against strangers enticing children into automobiles and the like, but they generally prohibit the act only if the defendant intends some sort of criminal activity. See, generally, Ala. Code § 13A-6-69 (Michie 1994); Colo. Rev. Stat. Ann. § 18-3-305 (West 1990 & Supp. 1996); N.J. Stat. Ann. § 2C:13-6 (West 1995); N.M. Stat. Ann. § 30-9-1 (Michie 1994); Va. Code Ann. § 18.2-370 (Michie 1996); Wis. Stat. Ann. § 948.07 (West 1996).

Only the State of Ohio seems to have a law which would clearly cover Robbins' conduct. See Ohio Rev. Code. Ann. § 2905.05 (Anderson 1996). The Ohio law provides that no person shall entice a child under the age of 14 years into a vehicle unless that person knows the child or is in some manner privileged to entice the child, and the statute specifies who holds that privilege. Offenders have been prosecuted under this law in Ohio, and it has been held to be constitutional. See, *Reynoldsburg v. Johnson*, 78 Ohio App. 3d 641, 605 N.E.2d 996 (1992) (upholding conviction under similar municipal ordinance); *State v. Hurd*, 74 Ohio App. 3d 94, 598 N.E.2d 72 (1991); *State v. Long*, 49 Ohio App. 3d 1, 550 N.E.2d 522 (1989); *State v. Kroner*, 49 Ohio App. 3d 133, 551 N.E.2d 212 (1988).

We sincerely hope that the Legislature considers making it a crime for an individual who is a stranger to a child to attempt to entice that child into an automobile. However, we conclude that the evidence does not support the conviction of Robbins for attempted kidnapping in either of the instances upon which the State relies. We therefore reverse, and remand with directions to vacate the convictions and sentences.

REVERSED AND REMANDED WITH DIRECTIONS.