STATE OF NEBRASKA, APPELLEE, V.
ROBERT LYLE ROBBINS, APPELLANT.
570 N.W.2d 185

Filed September 26, 1997.   No. S-96-251.

Thomas J. Garvey, Sarpy County Public Defender, and Gregory A. Pivovar for appellant.

Donald Stenberg, Attorney General, J. Kirk Brown, and Marilyn B. Hutchinson for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, and STEPHAN, JJ.

Caporale, J.

## I. STATEMENT OF CASE

The plaintiff-appellee, State of Nebraska, charged the defendant-appellant, Robert Lyle Robbins, with two counts of attempted "kidnapping with the intent to terrorize." The district court found him guilty as charged and sentenced him to consecutive terms of imprisonment for a period of not less than 2 nor more than 5 years on each count. In appealing to the Nebraska Court of Appeals, Robbins asserted the district court erred in finding the evidence sufficient to support the charges. Agreeing that the trial record did not establish Robbins intended to terrorize either of his victims, the Court of Appeals reversed the judgment of the district court. See *State v. Robbins*, 5 Neb. App. 382, 559 N.W.2d 789 (1997). The State thereupon successfully petitioned for further review by this court, claiming, in essence, that the Court of Appeals erred in finding merit to Robbins' assignment of error. We reverse the judgment of the Court of Appeals.

## II. SCOPE OF REVIEW

While in a bench trial of a criminal case the court's findings have the effect of a verdict and will not be set aside unless clearly erroneous, an appellate court has an obligation to reach an independent, correct conclusion regarding questions of law. See, *State v. Carpenter*, 250 Neb. 427, 551 N.W.2d 518 (1996); *State v. Kunath*, 248 Neb. 1010, 540 N.W.2d 587 (1995); *State v. Thompson*, 244 Neb. 189, 505 N.W.2d 673 (1993).

## III. FACTS

As she walked to school to get her brother from baseball practice on June 15, 1995, the then fifth grader, Chasity Covington, was approached by a stranger who drove his automobile near her and asked, "Have you seen a lost dog?" The stranger, who was later identified to be Robbins, then drove away. A couple of minutes later, the stranger again drove his automobile on the street next to the sidewalk where Covington was walking and asked, "Can you please help me? I really need this dog. My daughter is really sad." The stranger also offered

Covington $100 to get into his automobile and help him find the dog. When Covington attempted to cross the street intersection, the driver began to turn the corner but stopped his automobile so that it was blocking Covington's path. Covington told the stranger "no" and to leave her alone several times, after which the stranger drove fast from the scene. Covington considered the stranger's remarks threatening because his voice was "[a] little bit under yelling." Feeling "very scared," Covington ran as fast as she could the rest of the way to her school and reported what had happened to her brother and mother.

Brian Richards, an off-duty police officer, witnessed the stranger's encounter with Covington from a distance close enough to see the license plate number of the stranger's vehicle. Richards saw the vehicle stopped partially in the intersection blocking Covington's path and testified that Covington "appeared to be scared" and "was looking around as if looking for somebody." The stranger eventually noticed that Richards was watching him and sped away.

Covington's mother testified that she had expected to encounter Covington on her way to school and became anxious when she did not see Covington. When the mother arrived at the school, Covington was nervous, scared, and talking so fast she could not be understood, and after the incident, she clung to her mother and could not sleep.

Also on June 15, 1995, then 5-year-old Taylor Stradley was playing at a park when a stranger, again later identified as Robbins, approached her two different times and offered her $5 to get into his automobile. Stradley, who had seen a videotape teaching that a stranger "would take you and might kill you," was frightened, and refused to go.

After the State had rested, Robbins moved for a dismissal of the charges for lack of proof that he had intended to terrorize. The district court overruled the motion, and Robbins rested without adducing evidence.

## IV. ANALYSIS

We begin by reviewing the statute defining "kidnapping," Neb. Rev. Stat. § 28-313 (Reissue 1995), which reads:

(1) A person commits kidnapping if he abducts another or, having abducted another, continues to restrain him with intent to do the following:

(a) Hold him for ransom or reward; or

(b) Use him as a shield or hostage; or

(c) Terrorize him or a third person; or

(d) Commit a felony; or

(e) Interfere with the performance of any government or political function.

(2) Except as provided in subsection (3) of this section, kidnapping is a Class IA felony.

(3) If the person kidnapped was voluntarily released or liberated alive by the abductor and in a safe place without having suffered serious bodily injury, prior to trial, kidnapping is a Class II felony.

Neb. Rev. Stat. § 28-312 (Reissue 1995) defines "restrain," as used in § 28-313, as meaning

to restrict a person's movement in such a manner as to interfere substantially with his liberty:

(a) By means of force, threat, or deception; or

(b) If the person is under the age of eighteen or incompetent, without the consent of the relative, person, or institution having lawful custody of him[.]

It further defines "abduct" as meaning "to restrain a person with intent to prevent his liberation by: (a) Secreting or holding him in a place where he is not likely to be found; or (b) Endangering or threatening to endanger the safety of any human being."

Unfortunately, even with those definitions, § 28-313 is not a model of clarity. The placement of the comma after the "or" in subsection (1) of the statute gives the initial impression that the intentions specified in subdivisions (a) through (e) apply only to the act of continuing to restrain one who has been abducted and do not modify the act of abducting. Yet, if that is so, the language following the "or" is meaningless surplusage, for the crime would in all instances have been committed by the abduction, irrespective of what followed thereafter.

We are required to give penal statutes a strict construction which is sensible and prevents injustice or an absurd conse-

quence. *State v. Sundling*, 248 Neb. 732, 538 N.W.2d 749 (1995); *State v. Fahlk*, 246 Neb. 834, 524 N.W.2d 39 (1994). Moreover, such a construction is to be made in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served. *State v. Ryan*, 249 Neb. 218, 543 N.W.2d 128 (1996). Additionally, effect must be given, if possible, to all parts of a penal statute; no sentence, clause, or word should be rejected as meaningless or superfluous if it can be avoided. See *State v. Kelley*, 249 Neb. 99, 541 N.W.2d 645 (1996).

In order to give all the language of § 28-313 meaning, it must be read in such a manner that the intentions specified in subdivisions (a) through (e) apply both to the act of abduction and to the act of continuing to restrain one who has been abducted. Under that construction, all of the language defining kidnapping has meaning. One commits kidnapping if one either abducts another with one or more of the intentions specified in subdivisions (a) through (e), or abducts another without any of those intentions, but forms one or more of them while continuing to restrain the abducted person.

As to the matter of attempted kidnapping, we look to Neb. Rev. Stat. § 28-201(1)(b) (Reissue 1995), which provides that one shall be guilty of an attempt to commit a crime if one "[i]ntentionally engages in conduct which, under the circumstances as he believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his commission of the crime." Under that language, there can be no question that the trial record supports a finding that Robbins attempted to abduct each of the victims. However, as he did not succeed in abducting either Covington or Stradley, he could not have continued to restrain either of them. Therefore, under the charge in question, the dispositive question is not whether the attempt in fact terrorized anyone, but, rather, whether the trial record supports a finding that in attempting to abduct the victims, Robbins intended to terrorize either of them or some third person.

In reading a penal statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. See *State v. Cox*, 247 Neb. 729,

529 N.W.2d 795 (1995). Thus, in the absence of a statutory definition, terrorize means to "fill with terror" or "SCARE." Webster's Third New International Dictionary, Unabridged 2361 (1993). Terrorize is a synonym for frighten, *id.*, which means to "markedly disturb with fear: throw into a state of alarm: make afraid: TERRIFY." *Id.* at 911. In assessing whether the record supports a finding that Robbins intended to terrorize anyone, we are bound by the rule that kidnapping is a specific intent crime.

In *State v. Miller*, 216 Neb. 72, 341 N.W.2d 915 (1983), the defendant was convicted of kidnapping and argued on appeal that the trial court should have either dismissed the information or found him guilty of false imprisonment in the first degree. The defendant had entered an office and held the occupant prisoner at gunpoint for approximately 40 minutes, during which time the defendant threatened to kill the occupant. Afterward, the defendant left the office without harming the occupant, but the defendant promised to " 'get' " the occupant's family if the authorities were called. *Id.* at 73, 341 N.W.2d at 916. In comparing the two crimes of kidnapping and false imprisonment in the first degree, we wrote that one commits false imprisonment in the first degree under the relevant statute if one knowingly restrains or abducts another person under terrorizing circumstances or under circumstances which expose the person to the risk of serious bodily injury, but that in contrast, kidnapping "requires proof of a specific intention which is not an element of false imprisonment. An abduction might occur under terrorizing circumstances even though there was no intention on the part of the abductor to terrorize the victim." *Id.* at 74, 341 N.W.2d at 917.

It is true that intent may be inferred from the words and acts of the accused and from the facts and circumstances surrounding the conduct. *State v. Kunath*, 248 Neb. 1010, 540 N.W.2d 587 (1995); *State v. Masters*, 246 Neb. 1018, 524 N.W.2d 342 (1994). Moreover, one of sound mind is conclusively presumed to intend the obvious and probable consequences of one's voluntary acts. *State v. Vosler*, 216 Neb. 461, 345 N.W.2d 806 (1984); *State v. Ortiz*, 187 Neb. 515, 192 N.W.2d 151 (1971). However, as noted in *Miller, supra*, it does not follow that an

intent to terrorize is established merely by establishing that an abduction took place, for the circumstances might be terrorizing without an intent on the part of the abductor that they be such. Thus, proof of the intent required for the crime of kidnapping, as defined by § 28-313, requires proof of something more than the abduction. In *Miller, supra*, not only was the occupant held prisoner at gunpoint, but he was threatened with his own death and warned that his family was at risk.

A like situation obtained in *State v. Maeder*, 229 Neb. 568, 428 N.W.2d 180 (1988). There, the defendant approached the victim when she walked to her automobile in her workplace parking lot. He pointed a gun at her and told her to get in the passenger seat. After forcing her head down and throwing a coat over her so that she could not see, he drove her to another area. The whole time, he threatened to kill her if she looked up. After sexually assaulting her, the defendant drove the victim back to the parking lot, reminding her that he knew where she lived and that he would kill her if she told the police. We concluded that the kidnapping charge was supported by the evidence that the defendant terrorized the victim by pointing a gun at her and threatening to kill her.

More than abduction was involved as well in *Masters, supra*, wherein Herman, thinking that the victim, Drake, either stole or knew who had stolen some of Herman's property, met with Drake, accompanied by the defendant, Masters. Masters displayed his gun to Drake and began to question him about the theft. In the process, Masters struck Drake, made Drake aware that the gun was loaded, and threatened " ' "to blow [Drake's] guts all over the back seat of [the] car" ' " unless he talked." *Id.* at 1021, 524 N.W.2d at 346. Drake was scared to the point of crying. After Drake named the thief, Herman and Masters, in Drake's presence, discussed whether to kill him, and Masters ultimately did so. We concluded that under those circumstances, there was sufficient evidence to support a finding beyond a reasonable doubt that Masters abducted and restrained Drake with the intent to terrorize him and that he had thus killed Drake in the commission of a kidnapping. We again noted that it is the intent to terrorize which distinguishes kidnapping from false imprisonment in the first degree.

The evidence in the instant case establishes that when Robbins approached Covington at the intersection attempting to lure her into his vehicle for the second time, Covington was frightened, and such could be determined some distance away. Despite Covington's obvious fear, Robbins attempted a second time to convince her to enter his vehicle. This continued for more than half a minute. Additionally, knowing that his first unsuccessful attempt to abduct Covington frightened her, Robbins twice attempted to abduct Stradley the same day, again offering money to the young girl to enter his vehicle. While the evidence surrounding the first attempt to abduct Covington does not satisfy the specific intent required by § 28-313, the evidence is such that a finder of fact could find beyond a reasonable doubt that by the time of the second attempt to abduct Covington, Robbins knew that attempting to entice a young child to enter his vehicle was terrorizing, and thus permitted the finder of fact to find beyond a reasonable doubt that Robbins intended those subsequent attempts to terrorize both Covington and Stradley.

## V. JUDGMENT
The judgment of the Court of Appeals is reversed.

REVERSED.

McCORMACK, J., participating on briefs.