Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/18/2017 09:09 AM CDT

State of Nebraska, appellee, v.
Robyn J. Wood, appellant.
___ N.W.2d ___

Filed May 26, 2017.    No. S-16-190.

1. **Motions for New Trial: Appeal and Error.** A trial court's order denying a motion for new trial is reviewed for an abuse of discretion.
2. **Criminal Law: Evidence: Appeal and Error.** In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
3. **Judgments: Statutes: Appeal and Error.** To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below.
4. **Criminal Law: Statutes: Legislature: Intent.** In reading a penal statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.
5. **Statutes: Legislature: Intent: Appeal and Error.** An appellate court will not look beyond a statute to determine the legislative intent when the words are plain, direct, or unambiguous.
6. **Sexual Assault: Words and Phrases.** Under Neb. Rev. Stat. § 28-322.04 (Reissue 2008), the word "subject" means to cause to undergo the action of something specified.
7. **Jury Instructions: Appeal and Error.** Harmless error analysis applies to instructional errors so long as the error at issue does not categorically vitiate all the jury's findings.

8. **Verdicts: Juries: Appeal and Error.** In a criminal case tried to a jury, harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant.

9. **Motions for New Trial: Proof.** In order for a new trial to be granted, it must be shown that a substantial right of the defendant was adversely affected and that the defendant was prejudiced thereby.

10. **Trial: Evidence: Appeal and Error.** Because overruling a motion in limine is not a final ruling on admissibility of evidence and, therefore, does not present a question for appellate review, a question concerning admissibility of evidence which is the subject of a motion in limine is raised and preserved for appellate review by an appropriate objection to the evidence during trial.

Appeal from the District Court for Douglas County: J RUSSELL DERR, Judge. Affirmed.

Jim K. McGough, of McGough Law, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, STACY, KELCH, and FUNKE, JJ.

KELCH, J.

## INTRODUCTION

Following a jury trial, Robyn J. Wood appeals her conviction of first degree sexual assault of a protected individual, a Class III felony under Neb. Rev. Stat. § 28-322.04(3) (Reissue 2008). The parties do not dispute the status of Wood and the victim under the statute or the extent of the sexual contact. Instead, Wood primarily argues that the evidence does not support the jury's finding that she "subjected" the victim to sexual penetration. We disagree, and we affirm.

## BACKGROUND

The State's information charged Wood with first degree sexual assault of a protected individual, in violation of

§ 28-322.04(2) and (3). It alleged that on or about May 1 through July 31, 2014, in Douglas County, Nebraska, Wood subjected T.Z., a protected individual, to sexual penetration, as defined in Neb. Rev. Stat. § 28-318 (Reissue 2016). The incident that gave rise to the charge occurred while Wood was an employee at Boys Town, a residential treatment center for troubled youth, in Omaha, Nebraska. Boys Town is a contractor of the Nebraska Department of Health and Human services, and on the date of the offense, T.Z., then 17 years old, resided there under the custody and the guardianship of the State.

Prior to trial, Wood filed a motion in limine. She sought to exclude "[a]ny testimony or evidence regarding any evaluations, treatment or therapy regarding [her] past sexual behavior and/or sexual proclivities, including but not limited to sexual addiction meetings, as such evidence violates Neb. Rev. Stats. §§ 27-608, 27-414, 27-404 and 27-403." This included her attendance at "Sexaholics Anonymous." The district court's ruling on the motion is not part of the record and was not requested by any praecipe, but the district court orally expressed an inclination to deny it, and the parties agree that the district court overruled the motion.

According to evidence at trial, when T.Z. arrived at Boys Town in January 2014, he suffered from emotional and mood dysregulation, and he was initially placed in a secured facility on the campus. At first, T.Z. displayed physical aggression toward staff and other youth, which required staff to restrain him. This behavior resulted in a standing order to call police if T.Z. became aggressive. There was also testimony that T.Z. had a history of being manipulative. After about a month, T.Z.'s aggressive behavior improved, due in part to a medication change, and he moved to a "Sudyka," a family-style house on campus, for juvenile boys. There, T.Z. had more freedom than the secured facility had allowed, and he had the opportunity to earn points to use toward certain privileges, including off-campus activities with family or Boys Town staff.

At the time of T.Z.'s arrival, Wood was a shift manager at the Sudyka. Wood had previously worked as a behavioral health technician for several years, dealing directly with the youth on a day-to-day basis to implement the behavioral and medical programming. As a shift manager, Wood was somewhat involved with the youth, but her primary role was to oversee the behavioral health technicians.

Wood and other employees received training to handle boundary issues with the youth. According to testimony at trial, during T.Z.'s stay at the Sudyka, from March to June 2014, other staff noticed that Wood gave preferential treatment to and had "poor boundaries" with T.Z. The jury heard testimony that Wood allowed T.Z. to stay up late, prepared special meals for him, and brought him cake and ice cream on her day off.

One of the staff members who worked at the Sudyka, Samantha Cartwright, testified that Wood and T.Z. were often alone together. She observed that Wood allowed T.Z. to be alone with her upstairs while all of his other peers were downstairs, which was unusual. Once, Cartwright entered a locked office and saw Wood and T.Z. alone; it appeared to Cartwright that T.Z. had just left Wood's lap as Cartwright came into the room. Cartwright testified that Wood and T.Z. often went on private walks together after nightfall, which was not part of T.Z.'s treatment plan. According to Cartwright, Wood also took T.Z. to exercise his off-campus privileges, which was unusual because typically a behavioral health technician took the youth off campus while the shift managers supervised the staff on campus. While it was not a rule violation for a shift manager to accompany a resident off campus, it was "not appropriate."

The program director tasked with overseeing all of the staff and the day-to-day operations of the campus testified that in approximately April 2014, Wood herself reported that T.Z. made her uncomfortable because he was always looking at her and often wanted to be where she was. The program

director advised Wood not to be alone with T.Z. and to report any future concerns. After that, Wood did not report any additional concerns. Cartwright testified that in May 2014, she shared her concerns about Wood's relationship with T.Z. with her immediate supervisor, who reported it to the program director. Cartwright testified that she was told that the matter would be addressed, but the boundary issues between Wood and T.Z. continued.

According to testimony at trial, Wood eventually confided in her roommate, Heather Hutchinson, who also worked at Boys Town, about her relationship with T.Z. Hutchinson testified that in June 2014, Wood texted her and wanted to talk about her "'first time,'" which Hutchinson understood to mean Wood's first time having sex, since Hutchinson believed that Wood had been a virgin. Hutchinson testified that later, in person, Wood told her that she had had sex with T.Z. According to Hutchinson, Wood told her that she and T.Z. were cleaning a house on campus when T.Z. took her keys and went into a bedroom, where Wood followed and where they began kissing and ended up having sex. Hutchinson testified that Wood never said, nor did she get the impression from Wood, that this sexual encounter occurred against Wood's will. Hutchinson opined that Wood presented the encounter to her as "consensual." Hutchinson also testified that Wood told her about two prior instances when Wood and T.Z. kissed in the Sudyka, once in the basement and once on the stairs.

Hutchinson testified that she reported the matter to Child Protective Services, which prompted an investigation. Wood's resulting interview with the Boys Town police was recorded, and an audio copy was received into evidence at trial, without objection, and played for the jury.

During her interview, Wood stated that on the evening of the sexual encounter, she and T.Z. went alone to an unoccupied building on campus to retrieve some items. T.Z. took her keys and went into a bedroom, where Wood followed him. Wood said that T.Z. kissed her on the lips and that she tried to push

him off. Wood recounted that T.Z. then pushed her onto the bed and got on top of her. Wood tried to push T.Z. off with her legs and arms, but she could not. Wood reported that she told him to stop and said, "I don't want to do that; leave me alone." However, T.Z. remained on top of Wood and grabbed at her clothing. Wood said that T.Z. took off her pants and underwear and his two sets of shorts. Wood states that after she unsuccessfully tried to push T.Z. off, she stopped fighting because she thought she could be either "a statistic or a willing participant." Wood said that T.Z. inserted his penis into her vagina while on top of her. She stated that during the encounter, which lasted about 30 minutes, she told T.Z., "I don't want to do it," and he responded, "You know you want to do it." The encounter ceased when Wood received a telephone call and T.Z. finally complied with her order to stop. Then, they both got dressed and returned to the Sudyka.

Wood stated that she had been confused about whether she had tacitly consented when she gave up "fighting not to be a statistic," but concluded that she had not consented. Later in the interview, she described the situation as "partial consent." Wood admitted that part of her did not care and did not want to try to stop after initially trying to push T.Z. off of her.

Wood admitted that her relationship with T.Z. leading up to the incident may have been viewed by others as flirtatious and involving favoritism. Wood further stated that she had rebuffed T.Z. on previous occasions when he had kissed her cheek and hugged her and that he had also tried to hold her hand. She admitted that she knew it was a bad idea to be alone with T.Z. and admitted that when he entered the bedroom where they had sex, she knew T.Z.'s possible motivation and the possible outcome. However, Wood maintained that she did not want or plan to have sex with T.Z., at least not under those circumstances. She said it would have been different if he had been 19 years old rather than "a kid" at Boys Town.

In the interview, which was received without objection, Wood volunteered that she attends Sexaholics Anonymous

for "this addiction." She described Sexaholics Anonymous as a 12-step program for addiction to lust and craving more of something. She stated that she attended the program because she knew what her "[rock] bottom" was and did not want to hit it, but that when she had the encounter with T.Z., she hit rock bottom. She expressed shame and guilt over being "play[ed]" by T.Z. She said that she did not report the incident because of the shame, guilt, and possible consequences.

At trial, T.Z. testified about his relationship with Wood and the events leading up to their sexual encounter. He stated that he and Wood spent a lot of time together after he moved into the Sudyka. T.Z. testified that a few weeks before they had sex, he and Wood kissed when they were alone in the basement at the Sudyka. He characterized the kissing as mutual and testified that Wood told him that "nobody could find out." T.Z. stated that a couple of days later, he and Wood went for a drive and parked behind a store, where they kissed for 5 to 10 minutes. Again, the kissing was mutual and Wood reminded T.Z. that nobody must find out.

T.Z. testified that on June 4, 2014, a few days before he left Boys Town, he and Wood went to an unoccupied house on the Boys Town campus and had sex. T.Z. explained that they went to the house to look for extra towels and that when they went upstairs, he jokingly grabbed Wood's keys and entered one of the bedrooms. According to T.Z., Wood followed him into the bedroom, they started kissing, he took off her clothes, she undid his pants, and then they had sexual intercourse on the bed.

T.Z. testified that when Wood received a text message, she asked him to stop and he complied. T.Z. testified that otherwise, Wood never told him to stop or in any way indicated that she did not want to have sex with him. He stated that afterward, Wood told him that nobody must find out. Then, T.Z. recounted, they went back to the Sudyka, where Wood came to T.Z.'s room, gave him her telephone number, and said he could call her anytime.

The jury instructions setting forth the elements of the offense required the jury to determine, among other things, whether Wood "subjected [T.Z.] to sexual penetration." The jury instructions further stated that "[s]ubject, or subjecting an individual to something, means 'to bring under control or dominion.'" Neither the State nor Wood objected to these instructions.

The jury found Wood guilty of the crime charged: first degree sexual abuse of a protected individual.

Following the verdict, Wood moved for a new trial on the basis that the verdict was not sustained by the evidence or was contrary to law. At a hearing on the motion, the district court received a transcript of T.Z.'s testimony. Wood's counsel argued in part that because T.Z. effectuated the sexual penetration, the evidence did not support a finding that Wood "subjected" T.Z. to sexual penetration, that is, a finding that the sexual penetration resulted from an exercise of control or dominion by Wood. The district court overruled the motion.

The district court subsequently sentenced Wood to a period of 5 years' probation, with various terms and conditions.

This appeal followed.

## ASSIGNMENTS OF ERROR

Wood assigns, summarized and restated, that (1) the district court erred in overruling her motion for new trial, (2) the evidence was insufficient to support the jury verdict that she had subjected T.Z. to sexual penetration, and (3) the district court erred in overruling her motion in limine and allowing the jury to consider evidence that she attended Sexaholics Anonymous.

## STANDARD OF REVIEW

[1] A trial court's order denying a motion for new trial is reviewed for an abuse of discretion. *State v. Stricklin*, 290 Neb. 542, 861 N.W.2d 367 (2015).

[2] In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination

thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Dominguez*, 290 Neb. 477, 860 N.W.2d 732 (2015).

## ANALYSIS

### Sufficiency of Evidence and Motion for New Trial

Wood assigns that the evidence was insufficient to support the jury verdict. Similarly, she also assigns that the district court erred in overruling her motion for new trial arguing that the verdict was not sustained by the evidence.

Wood was convicted of first degree sexual abuse of a protected individual pursuant to § 28-322.04, which provides, in relevant part:

(1) For purposes of this section:

(a) Person means an individual employed by the Department of Health and Human Services and includes, but is not limited to, any individual working in central administration or regional service areas or facilities of the department and any individual to whom the department has authorized or delegated control over a protected individual or a protected individual's activities, whether by contract or otherwise; and

(b) Protected individual means an individual in the care or custody of the department.

(2) A person commits the offense of sexual abuse of a protected individual if the person subjects a protected individual to sexual penetration or sexual contact as those terms are defined in section 28-318. It is not a defense to a charge under this section that the protected

individual consented to such sexual penetration or sexual contact.

(3) Any person who subjects a protected individual to sexual penetration is guilty of sexual abuse of a protected individual in the first degree.

Under § 28-318(6), sexual penetration means, among other things, "sexual intercourse in its ordinary meaning."

Wood does not dispute that she is a "person" under § 28-322.04(2) or that T.Z. was a "protected individual" thereunder. Nor does she deny that sexual penetration occurred. Instead, she argues that the State offered no evidence that she "'subject[ed]'" T.Z. to such sexual penetration as prohibited by § 28-322.04(2) because she did not exercise "control or dominion" over him. Brief for appellant at 11. To the contrary, Wood asserts that T.Z. was the "aggressor" and exercised control or dominion over her when he effectuated the sexual penetration without Wood's assistance or encouragement. *Id*. at 10. Wood contends that to find that she "subjected" T.Z. to sexual penetration would require an overly broad interpretation of the statute defining sexual penetration, not supported by the plain language of the statute. *Id.* at 12. We disagree.

[3-5] To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below. *State v. Kolbjornsen*, 295 Neb. 231, 888 N.W.2d 153 (2016). In reading a penal statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *State v. Robbins*, 253 Neb. 146, 570 N.W.2d 185 (1997). We will not look beyond a statute to determine the legislative intent when the words are plain, direct, or unambiguous. *State v. Loyuk*, 289 Neb. 967, 857 N.W.2d 833 (2015).

In *State v. Loyuk, supra*, we applied the preceding rules of statutory construction to determine the plain meaning of

"subjects" in Neb. Rev. Stat. § 28-322.01 (Reissue 2016), which addresses sexual abuse of an inmate or parolee. That section, similar to the one at issue in this case, provides:

> A person commits the offense of sexual abuse of an inmate or parolee if such person subjects an inmate or parolee to sexual penetration or sexual contact as those terms are defined in section 28-318. It is not a defense to a charge under this section that the inmate or parolee consented to such sexual penetration or sexual contact.

§ 28-322.01. The appellant in *Loyuk* argued that he did not "subject" the victim to sexual penetration as set forth in § 28-322.01 because the victim was a voluntary participant. He proposed that in the context of § 28-322.01, "'subject'" means "'"bring under control or dominion"'" or "'"force to undergo or endure."'" *Loyuk*, 289 Neb. at 974, 857 N.W.2d at 842. We expressly rejected these definitions, reasoning that they could not be squared with the statement in § 28-322.01 that consent of the inmate or parolee is not a defense. Rather, we concluded, "The plain meaning of 'subject' is 'to cause to undergo the action of something specified.' Here, the thing specified is sexual penetration and [the appellant] caused [the victim] to undergo this action by participating in the sexual act." *Loyuk*, 289 Neb. at 974, 857 N.W.2d at 842.

[6] Both the statute at issue in *Loyuk* and the statute at issue here prohibit a person in authority from subjecting a person in his or her charge to sexual penetration or contact, and both preclude the defense that the victim consented to the sexual act. Given these similarities, we see no reason why the reasoning of *Loyuk* and its consideration of the definition of "subject" should not apply to § 28-322.04. Therefore, we hold that under § 28-322.04, the word "subject" means to cause to undergo the action of something specified.

Applying this definition of "subject" and viewing the evidence in the light most favorable to the prosecution, we conclude that the evidence supports a finding beyond a reasonable doubt that Wood, a person as defined in § 28-322.04(1)(a),

subjected T.Z., a protected individual, to sexual penetration. Testimony by T.Z. and Hutchinson, along with Wood's own police interview, provided evidence that Wood caused T.Z. to undergo sexual penetration by willingly participating in the sexual act. And like T.Z.'s consent, his role in effectuating the sexual penetration is immaterial. § 28-322.04(2).

[7,8] We acknowledge that the jury instructions in the instant case defined "subject" as "to bring under control or dominion," a definition that we expressly rejected in *State v. Loyuk*, 289 Neb. 967, 974, 857 N.W.2d 833, 843 (2015), in favor of the broader "'to cause to undergo the action of something specified.'" Harmless error analysis applies to instructional errors so long as the error at issue does not categorically vitiate all the jury's findings. *State v. Abram*, 284 Neb. 55, 815 N.W.2d 897 (2012). In a criminal case tried to a jury, harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant. See *State v. McHenry*, 250 Neb. 614, 550 N.W.2d 364 (1996). Although the district court should have used our definition from *Loyuk*, the jury, as the trier of fact, deliberated within the confines of the narrower definition of "subject" and still found Wood guilty of the essential elements of the crime charged. See *State v. Sandoval*, 280 Neb. 309, 788 N.W.2d 172 (2010) (absent evidence to contrary, it is presumed that jury followed instructions given in arriving at its verdict). Thus, Wood suffered no harm as a result of the jury instruction given.

[9] Having rejected Wood's claim that the jury lacked sufficient evidence to convict her, we find no merit to her contention that the district court abused its discretion in denying her motion for new trial, which Wood based on the same grounds. In order for a new trial to be granted, it must be shown that a substantial right of the defendant was adversely affected and that the defendant was prejudiced thereby. *State v. Faust*, 269 Neb. 749, 696 N.W.2d 420 (2005). The evidence supported

Wood's conviction. She suffered no violation of any substantial right and no prejudice.

### Motion in Limine

[10] Finally, Wood assigns that the district court erred in overruling her motion in limine and allowing the jury to consider evidence that she attended Sexaholics Anonymous. Although the parties agree that the district court overruled the motion, the record does not contain any such ruling. However, because overruling a motion in limine is not a final ruling on admissibility of evidence and, therefore, does not present a question for appellate review, a question concerning admissibility of evidence which is the subject of a motion in limine is raised and preserved for appellate review by an appropriate objection to the evidence during trial. *State v. Almasaudi*, 282 Neb. 162, 802 N.W.2d 110 (2011). Wood did not object at trial when the State presented evidence of her attendance at Sexaholics Anonymous. Therefore, she did not preserve this issue for our consideration on appeal.

### CONCLUSION

For the reasons set forth above, we affirm Wood's conviction.

Affirmed.

Cassel, J., participating on briefs.