IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MOSS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BOBBY J. MOSS, APPELLANT.

Filed May 17, 2016.    No. A-15-230.

Appeal from the District Court for Douglas County: MARLON A. POLK, Judge. Affirmed.

Brian S. Munnelly for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

INBODY, PIRTLE, and RIEDMANN, Judges.

PIRTLE, Judge.

INTRODUCTION

Bobby J. Moss appeals from an order of the district court for Douglas County which denied his motion for postconviction relief following an evidentiary hearing. Based on the reasons that follow, we affirm.

BACKGROUND

On March 17, 2005, the State filed an amended information charging Moss with two counts of second degree murder, and two counts of use of a deadly weapon to commit a felony, arising out of acts occurring on approximately December 4, 2003, against victim Michelle Harlan and her unborn child.

A bench trial commenced on May 31, 2005. The evidence established that on December 6, 2003, officers with the Omaha Police Department responded to a call near Carter Lake in Douglas

- 1 -

County, Nebraska, regarding a dead female body lying face up in the water. The female was identified through fingerprints as Harlan. It was determined that Harlan was 7-1/2 months pregnant and that the fetus' death was caused by Harlan's death. Shortly after Harlan's body was found, the police department identified Verdell Moss, Moss's first cousin, as a suspect based on a call to Crime Stoppers made by Verdell in which he claimed responsibility for the murder. The police interviewed Verdell and his girlfriend. Verdell changed his story, implicating Moss as the person who did the shooting, and indicating he helped Moss after the shooting. Following the interview with Verdell, the police arrested him and obtained a warrant for Moss, subsequently arresting him.

Verdell was charged with being an accessory to a felony, a Class III felony. In exchange for his cooperation, a plea agreement was reached with the State and he was allowed to plead to a Class IV felony.

On December 17, 2003, after Moss was advised of his *Miranda* rights, he gave a statement to the police. Moss's statement included an admission that he shot Harlan during a drug deal, but claimed he did not intend to shoot her. He also stated that he and Verdell put Harlan in the trunk of a car, and that Harlan said she needed to go to a hospital, but that Moss did not care at the time. Moss denied dumping Harlan's body in Carter Lake. Moss sought to have the statement suppressed, but the court denied Moss's suppression motion and the statement was admitted at trial.

When the time came for Moss to present his case in chief, Moss's counsel stated that he had subpoenaed Verdell and would call him to the stand but that Verdell's counsel had informed him that Verdell would invoke his right against self-incrimination if called to testify. Verdell's counsel verified that statement, and the court found that Verdell would assert his constitutional right not to incriminate himself. The defense then rested.

On June 3, 2005, the district court entered a verdict adjudging Moss guilty of second degree murder, use of a deadly weapon to commit a felony, and manslaughter of Harlan's unborn child. Moss was sentenced on August 17. On August 23, Moss filed a motion for new trial, alleging that the actions of the prosecuting attorney prevented him from having a fair trial and that the verdict was not sustained by sufficient evidence or was contrary to law. Following a hearing, the court overruled the motion.

On appeal, Moss had the same counsel he had at trial. He raised several issues on appeal, which included challenging the constitutionality of Neb Rev. Stat. § 28-392 (Reissue 2008), the fetal homicide statute, and an allegation that the trial court erred in overruling his motion for new trial based on prosecutorial misconduct. See *State v. Moss*, No. A-05-1132, 2007 WL 91649 (Neb. App. Jan. 16, 2007) (not designated for permanent publication).

Concerning the constitutionality of § 28-392, this court held that Moss had not complied with Neb. Ct. R. of Prac. 9E, which requires that the party alleging unconstitutionality of a statute must file and serve a separate written notice of the challenge when filing the brief with the Clerk of the Supreme Court and therefore, the constitutional challenge had not been properly preserved for appellate review. In regard to the motion for new trial based on prosecutorial misconduct, Moss admitted that he failed to timely file the motion pursuant to Neb. Rev. Stat. § 29-2103 (3) (Supp. 2015), but argued that he was unavoidably prevented from doing so. The court determined there

was nothing in the record to show that Moss was unavoidably prevented from filing a timely motion for new trial and did not consider the motion on appeal.

On May 7, 2007, Moss filed a pro se motion for postconviction relief. In it he alleged that his counsel provided ineffective assistance in failing to comply with Neb. Ct. R. of Prac. 9E when raising the constitutional issue on appeal, failing to file his motion for new trial in a timely manner, and failing to impeach and challenge Verdell's statement and affidavit.

Moss was subsequently appointed counsel and his counsel filed a supplemental postconviction motion adding a claim of prosecutorial misconduct for improperly influencing Verdell such that it deprived Moss of a fair trial.

On October 1, 2013, an evidentiary hearing was held on Moss's postconviction motion and supplemental motion. The court took judicial notice of the court file, including all pleadings, and the bill of exceptions. The court also accepted three additional exhibits into evidence: the deposition of Nicole Gangitano, Verdell's attorney at the time of trial; the deposition of Sandra Denton, the prosecutor; and the deposition of Christopher Lathrop, Moss's trial and appellate attorney. Following the hearing, the court denied Moss's motion for postconviction relief.

## ASSIGNMENTS OF ERROR

Moss assigns that the trial court erred in (1) failing to find that his counsel was ineffective in failing to properly raise and preserve the constitutional challenge to § 28-392, (2) failing to find his trial counsel was ineffective in failing to file a motion for new trial based upon allegations of prosecutorial misconduct, and (3) failing to find that the prosecutor committed misconduct which deprived Moss of a fair trial.

## STANDARD OF REVIEW

A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Crawford*, 291 Neb. 362, 865 N.W.2d 360 (2015). In contrast, the appellate court independently resolves questions of law. *State v. Armstrong*, 290 Neb. 991, 863 N.W.2d 449 (2015).

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Armstrong, supra*. Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact. *Id*. Findings of fact include the circumstances of the case and the counsel's conduct and strategy. *Id*. It is a question of law, however, whether those facts show counsel's performance was deficient and prejudiced the defendant. *Id*.

## ANALYSIS

*Constitutional Challenge to § 28-392.*

Moss first argues that the trial court erred in failing to find that he was denied effective assistance of counsel based on appellate counsel's failure to properly raise and preserve the constitutional challenge to § 28-392. Moss' counsel did properly raise the issue in the district court,

but on appeal we found that counsel failed to properly preserve it for appellate review. Specifically, appellate counsel did not comply with Neb. Ct. R. of Prac. 9E, which requires that a party alleging unconstitutionality of a statute must file and serve a separate written notice of the challenge to the statute with the Clerk of Supreme Court. As a result, the issue was not properly preserved for appellate review and this court refused to address the constitutional challenge on appeal.

When analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel failed to bring a claim on appeal that actually prejudiced the defendant. *State v. Timmens*, 282 Neb. 787, 805 N.W.2d 704 (2011). That is, courts begin by assessing the strength of the claim appellate counsel purportedly failed to raise. *Id.* Counsel's failure to raise an issue on appeal could be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *Id.*

Section 28-392 states: "(1) A person commits murder of an unborn child in the second degree if he or she, in committing an act or engaging in conduct that causes the death of an unborn child, intends, but without premeditation, to kill the unborn child or another." Neb. Rev. Stat. § 28-396 (Reissue 2008) provides: "For purposes of the Assault of an Unborn Child Act, unborn child means an individual member of the species Homo sapiens at any stage of development in utero."

Moss argues that § 28-392 is unconstitutionally vague and overbroad, both on its face and as applied to him. A statute is presumed to be constitutional, and all reasonable doubts are resolved in favor of its constitutionality. *State v. Loyuk*, 289 Neb. 967, 857 N.W.2d 833 (2015). When, as here, a defendant challenges both the overbreadth and vagueness of a law, we analyze overbreadth first. *Id.* An attack on a statute's overbreadth is a claim that it impermissibly infringes on a constitutionally protected right. *Id.* A statute is unconstitutionally overbroad only if its overbreadth is substantial, i.e., when the statute would be unconstitutional in a substantial portion of the situations to which it is applicable. *Id.*

Moss contends that the statute is overly broad on its face and as applied to him. However, he fails to set forth what argument he would have made on direct appeal to establish that § 28-392 is overly broad or how or why it infringes on a constitutionally protected right.

Moss also argues that § 28-392 is unconstitutional under the "void for vagueness" doctrine. The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *State v. Loyuk, supra.* The more important aspect of the void-for-vagueness doctrine is not actual notice, but the requirement that a legislature establish minimal guidelines to govern law enforcement. *Id.*

Moss contends that the statute is vague because it does not require that the actor know or should have reasonably known that the mother was pregnant. He makes no argument in support of his allegation.

The trial court determined that had appellate counsel properly preserved the constitutional challenge to § 28-392 for appellate review it would not have changed the result of the appeal. It noted that fetal homicide statutes from other jurisdictions, similar to § 28-392 and § 28-389, that have been challenged have been found to be constitutional. For instance, the trial court cited to *State v. Lawrence*, 240 S.W.3d 912 (Tex. 2007), where the defendant challenged the criminal

homicide statute of the Texas Penal Code as being unconstitutionally vague. The statute defined an "individual" as a "human being who is alive, including an unborn child at every state of gestation from fertilization until birth." Tex. Pen. Code §§ 19.02(b)(1), 19.03(a)(7)(A). In finding the statute was not impermissibly vague, the court noted that by "expressly defining capital murder such that one of the victims may be any unborn child from fertilization throughout all stages of gestation, the statute leaves no ambiguity as to what conduct is proscribed" and that "[n]o ordinary person reading the statute would have any doubt as to whether it encompasses victims at all stages of gestation." *Id.* at 915-16. The *Lawrence* court noted that numerous other jurisdictions were in agreement with its finding and that it had found "no case from any state supreme court or federal court that has struck down a statute prohibiting the murder of an unborn victim." *Id.* at 918. The opinion then lists a string cite of cases in support of this statement.

The trial court in the present case determined that the case law refutes that any challenge to § 28-392 on appeal would have been successful, given that no other jurisdiction has found similar statutes to be unconstitutionally vague and it found no reason why Nebraska would be different. The court found that Moss had not met his burden in establishing a vagueness or due process argument that would have changed the result of the appeal.

Moss does not cite to any case which has found a fetal homicide statute to be unconstitutional, nor does he offer any argument why § 28-392 would be different from other states such that it would not withstand a constitutional challenge. Given that similar statutes in other states have withstood similar constitutional challenges, we agree with the trial court that there is no reason why Nebraska's statute would not do the same.

Moss has failed to show that there is a reasonable probability that properly preserving the constitutional challenge to § 28-392 would have changed the result of the appeal. See *State v. Timmens, supra.* Accordingly, counsel's failure to properly preserve the issue on appeal did not amount to ineffective assistance of counsel. Moss's first assignment of error is without merit.

*Motion for New Trial/Prosecutorial Misconduct.*

Moss' second and third assignments of error are interrelated. He assigns that trial counsel was ineffective in failing to file a motion for new trial based on allegations of prosecutorial misconduct, and that the prosecutor did in fact commit misconduct such that it deprived him of a fair trial. The record shows that a motion for new trial based on prosecutorial misconduct was filed, which the trial court overruled. On direct appeal, Moss argued that the trial court erred in not granting his motion for a new trial based on prosecutorial misconduct. This court determined that Moss had not timely filed his motion for new trial pursuant to Neb. Rev. Stat. § 29-2103 (3), and did not show that he was unavoidably prevented from timely filing the motion. As such, the Court did not consider the matter.

Based on our previous determination on direct appeal that trial counsel was not unavoidably prevented from timely filing the motion for new trial, we must determine whether trial counsel was ineffective in failing to timely file the motion so it would have been reviewed on direct appeal. In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington*, to show that counsel's performance was deficient and that counsel's deficient performance

- 5 -

prejudiced the defense. *State v. Mantich*, 287 Neb. 320, 842 N.W.2d 716 (2014). In order to show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* The two prongs of this test, deficient performance and prejudice, may be addressed in either order. *Id.* The entire ineffectiveness analysis is viewed with the strong presumption that counsel's actions were reasonable. *Id.* Defense counsel is not ineffective for failing to raise an argument that has no merit. *Id.*

Moss contends that Denton, the prosecutor, committed misconduct by threatening to enhance charges pending against Verdell if he testified as a defense witness at trial. At the postconviction hearing, evidence was presented in regard to Verdell's plea agreement and the reason why he did not testify on behalf of Moss. Gangitano, counsel for Verdell, testified that Verdell was deposed prior to trial and his story in regard to his involvement in the murder remained the same as the one he told police. After the deposition, the State believed Verdell's testimony would be useful and it agreed to a plea bargain. In the end, Verdell did not testify at trial because the State did not believe it needed his testimony to prove its case, but still gave him the reduced charge because he was available during the trial.

Gangitano testified that Verdell never asked her if he could testify on behalf of Moss but if he had, she would have advised him not to because he would have to completely change his version of the events that he had told from the time he was arrested, which would have been to his detriment. Gangitano said that Lathrop, Moss's trial counsel, never approached her about having Verdell testify for Moss at trial after he found out the State was not going to use him. However, after Moss was convicted, Lathrop contacted Gangitano with an affidavit he had prepared for her to sign. Gangitano said she skimmed the affidavit and signed it. The affidavit stated that as part of a plea agreement Verdell's charge of accessory to a felony was reduced from a Class III felony to a Class IV felony in exchange for his cooperation with the State; that the State did not ultimately need Verdell's testimony at trial, and that it was conveyed to Gangitano by the State that if Verdell testified on behalf of Moss, the plea agreement would no longer be available; and as a result, Gangitano advised Verdell to not speak with Lathrop and to not testify on Moss' behalf.

Gangitano testified that in her discussions with the prosecutor about Verdell's plea deal, it was implied that if Verdell testified for Moss, the plea deal would be off. She stated that the prosecutor knew Verdell's version of the events at issue and knew that if Verdell were to testify for Moss he would have to completely change his story to be useful to Moss. Verdell would no longer be telling the story he had related to the police and the prosecutor and there would be no reason for the State to offer Verdell the plea bargain. Gangitano testified that the State never threatened Verdell or expressly stated that he could not testify for Moss. Gangitano testified that she did not think the prosecutor crossed any lines or committed misconduct in any way.

Denton, the prosecutor, testified that Gangitano was far more interested in getting a plea deal for Verdell than she was interested in offering one because she thought she could prove the case without his testimony. As it turned out, at trial she decided that the evidence presented was sufficient to get a conviction and she chose not to call Verdell as a witness.

Denton testified that she found Verdell's account of his involvement the night Harlan was killed to be credible. She also stated that there was other evidence to corroborate Verdell's story,

specifically his girlfriend statement that he was home with her on the night in question and cell phone and cell tower records.

Denton testified that the stance made by the State that it would withdraw Verdell's plea agreement if he testified on behalf of Moss was based on its concern about Verdell deciding to be untruthful if he testified for Moss. She agreed with Gangitano that if Verdell would have testified for Moss he would have given a different version of events than he would have had he testified for the State. Denton also stated that in a situation where a co-defendant agrees to testify for the State, a plea agreement is always contingent upon the co-defendant testifying truthfully.

Lathrop testified that after Moss' trial, he crossed paths with Gangitano and she stopped him and told him that she could not let Verdell testify on Moss' behalf because Denton was going to revoke the plea agreement if he did. Lathrop drafted the affidavit for Gangitano to sign after this conversation.

When asked specifically what Denton did improperly in prosecuting this case, Lathrop stated that based on what Gangitano told him, it sounded like Denton tried coercing Verdell into not testifying for Moss so Moss could not raise reasonable doubt, could not argue a lesser included charge, and it left Moss with no defense. Lathrop believed that the real reason Verdell did not testify for Moss was because of threats by Denton to revoke the plea agreement if he did.

There was no evidence presented in regard to what specific testimony Verdell would have given had he testified at trial as a defense witness. There was only the testimony by Denton and Gangitano that to be beneficial to Moss, his testimony would have been contrary to what he had previously told the State.

We conclude that the evidence presented at the postconviction hearing showed that Denton did not threaten Verdell into not testifying for Moss. Rather, it was understood that if Verdell testified for Moss, he would be telling a version of events that was inconsistent with what he had been telling the State up to that point, which would be a false statement. Therefore, the State would have no reason to give Verdell the benefit of the bargain if he provided testimony that was favorable to Moss and inconsistent with his version of events upon which the plea agreement was made. Based on the evidence presented at the postconviction hearing, the trial court's finding that there was no prosecutorial conduct was not clearly erroneous.

Accordingly, the motion for new trial based on grounds of prosecutorial misconduct would not have been successful had it been reviewed on appeal and therefore, counsel was not ineffective for failing to timely file the motion. See *State v. Mantich, supra,* (defense counsel is not ineffective for failing to raise an argument that has no merit). Moss' second and third assignments of error are without merit.

CONCLUSION

We conclude that Moss' appellate counsel was not ineffective in failing to properly raise and preserve a constitutional challenge to § 28-392, that his trial counsel was not ineffective in failing to timely file a motion for new trial based upon allegations of prosecutorial misconduct, and there was no misconduct by the prosecutor which deprived Moss of a fair trial. The order of the district court denying Moss' motion for postconviction relief is affirmed.

AFFIRMED.